**William T. and Mary Clare D. WOHLFORD, Plaintiffs,**

v.

**COMMONWEALTH OF VIRGINIA, Dept. of Health, et al., Defendants.**

**Civ. A. No. 88–0112–A.**

United States District Court, W.D. Virginia, Abingdon Division.

Nov. 10, 1988.

---

William T. Wohlford and Mary Clare D. Wohlford, Wytheville, Va., pro se.

J. Steven Sheppard, III, Asst. Atty. Gen., Richmond, Va., for defendants.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

The plaintiffs have filed suit alleging that the Commonwealth of Virginia and the Department of Health, through the defendants Mays, Tenney, Hicks, Schutrumpf, Stern, and Buttery deprived them of their due process rights under 42 U.S.C. § 1983, and the Fourteenth Amendment, and have requested injunctive, declaratory, and monetary relief. They have also asked this court to exercise pendant jurisdiction over torts allegedly arising under Va.Code Ann. §§ 8.01–45, 8–630, and 18.2–500; intentional interference with business relations; intentional infliction of emotional distress; and slander of product. The defendants have moved to dismiss.

From the complaint and the exhibits attached thereto, it appears that the plaintiffs operate a dairy goat farm near Wytheville. This lawsuit is merely another chapter in a long-running battle they have had with the Virginia Department of Agriculture and Consumer Services over the sale and distribution of goat milk and related products. Since receiving a permit from the Department of Health to process and

distribute pasteurized goat milk in Virginia in 1978, the plaintiffs have been continuously occupied in attempts to force the state agencies to take legal action against their competitors, who, they allege, have been selling goat milk in violation of state health standards. Their efforts have met with mixed success at best.

Although sticklers for the rules where others are concerned, the plaintiffs appear to apply somewhat less rigorous standards to themselves when it suits them to do so, if the statements made in their complaint be correct. Early in 1987, they had received a letter from the Department of Agriculture (VDACS) notifying them that a test of a sample of milk from their dairy had shown that it was in excess of somatic cell limits prescribed by state law, and since two of their last four tests were also over limits, they were aware that another bad sample would cause VDACS to suspend their permit to produce Grade A goat milk for processing, per VDACS Rule 4. Nevertheless, in February 1987, the plaintiffs began to lengthen the time between milkings (which they admit raises the somatic cell count) because they planned to be absent for several days in April for their daughter's wedding, and because they needed to accustom the goats to not being milked every day.

VDACS did make an unannounced test on March 17, and the somatic cell count was above limits. VDACS immediately sent plaintiffs a notice by certified mail that their license to produce milk for processing was suspended, but as a result of a series of post office errors and a heavy snowstorm, the plaintiffs say they did not receive the letter until April 7. Meanwhile, they had pasteurized 29 gallons of milk on April 3. On April 15, Dwain M. Mays, the Virginia Department of Health's Regional Food & Milk Program Manager, sent plaintiffs a certified letter suspending their permit to process and distribute pasteurized Grade A goat milk in Virginia. The stated reason for the suspension was violation of Va.Code § 3.1–530.1 through § 3.1–530.9, which require "all Grade A raw milk for pasteurization" to conform to specified "chemical, bacteriological, somatic cell, and temperature standards." It was only the somatic cell counts that VDH found to be outside limits. Mr. Mays stated that he had visited plaintiffs' dairy on April 14 and observed that a pasteurization recording chart showed that plaintiffs had pasteurized goat milk on April 3, which "was after notification by the Virginia Department of Agriculture that your Grade A raw permit had been suspended." He then noted that violations of § 3.1–530.1 et seq. are punishable as misdemeanors under § 3.1–530.9. The letter concluded by saying that a copy would be sent to the state of North Carolina and to the Kroger Company; a large part of plaintiffs' sales were through Kroger stores in North Carolina.

The plaintiffs allege that the defendants' action in sending this letter was a violation of the Department of Agriculture's own Rules and Regulations, which have the force and effect of law.[1] *See Carbaugh v. Solem,* 225 Va. 310, 314, 302 S.E.2d 33, 35 (1983). Section 4(D) of the Regulations provides that permits shall not be revoked without a written notice of intent which particularly states the violations alleged and which "afford[s] the holder such reasonable opportunity to correct such violations as may be agreed to by the parties, or in the absence of agreement, fixed by the State Regulatory Authority, before making any order of suspension effective." These procedures do not apply where the milk involved "creates, or appears to create, an imminent hazard to the public health." *Id.* The plaintiffs maintain that there was never any danger to the public from any milk that they pasteurized and that the Department of Health and its agents were aware of that fact. They allege that by sending the letter to the Kroger Company without affording them a hearing, the Department

---

**1.** Although the Rules and Regulations are promulgated by the Department of Agriculture, Va. Code § 3.1–530.4 empowers the state Health Commissioner and his agents to enforce the regulations adopted by the Department of Agriculture under § 3.1–530.1 "from the point of delivery at the plant to the consumer," thus the involvement of both departments in regulating individuals, like the Wohlfords, who are producers, processors, and distributors of milk.

of Health caused Kroger to cancel their contracts. They further allege that as a result, they have had difficulty re-establishing the business they had built up.

■ Most of the plaintiffs' claims, including all of their tort claims, arise under Virginia law, over which they have asked this court to exercise pendant jurisdiction. Before doing so, however, this court must obviously have subject matter jurisdiction over the federal questions plaintiffs have raised. As the Fourth Circuit has recently had occasion to point out, "federal courts are courts of limited jurisdiction" and "it is always incumbent upon a federal court to evaluate its jurisdiction *sua sponte* to ensure that it does not decide controversies beyond its authority." *Davis v. Pak*, 856 F.2d 648, 650 (4th Cir.1988) (quoting *Johnson v. Town of Elizabethtown*, 800 F.2d 404, 407 (n. 2) (4th Cir.1986)). If the plaintiffs' federal claim is so insubstantial that this court has no jurisdiction to hear it, then the pendant state law claims must be dismissed as well. If, however, the federal claim is merely weak, even too weak to survive a Fed.R.Civ.Proc. 12(b)(6) motion to dismiss for failure to state a claim, then this court still has jurisdiction to hear and dispose of the state law claims. *Id.*

■ The insubstantiality doctrine was most recently restated and reaffirmed by the Supreme Court in *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). Citing a variety of cases, the Court stated that "the federal courts are without power to entertain claims otherwise within their jurisdiction if they are 'so attenuated and insubstantial as to be absolutely devoid of merit, wholly insubstantial, obviously frivolous, plainly insubstantial, or no longer open to discussion.'" *Id.* at 536–7, 94 S.Ct. at 1379 (citations omitted). "[A] suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such claim is wholly insubstantial or frivolous," *Bell v. Hood*, 327 U.S. 678, 682–3, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946), although Mr. Justice Holmes maintained that it was really not a question of "jurisdiction" at all. *The Fair v. Kohler Die Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 411–12, 57 L.Ed. 716 (1913). Be that as it may, it is apparent that the plaintiffs' federal claims are insubstantial.

■ The Due Process Clause, like its antecedent in the Magna Carta, was "intended to secure the individual from the arbitrary exercise of the powers of government." *Bank of Columbia v. Okely*, 17 U.S. (4 Wheat.) 235, 244, 4 L.Ed. 559 (1819) (quoted in *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986)). Due process contemplates that there will be "an *opportunity* ... granted at a meaningful time and in a meaningful manner for a hearing appropriate to the nature of the case." *Boddie v. Connecticut*, 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971) (emphasis in original) (citations omitted). A hearing is required to be held before the deprivation of any significant property interest, apart from extraordinary situations in which an after-the-fact hearing is justified by a valid government interest. *Id.*

The plaintiffs' license to process and distribute milk was suspended by VDH because they pasteurized a batch of milk after VDH believed that they had received notice of their suspension by VDACS for the somatic cell count violations. There can be no doubt that plaintiffs had a property interest in their VDH license. *See Barry v. Barchi*, 443 U.S. 55, 64, 99 S.Ct. 2642, 2649, 61 L.Ed.2d 365 (1979) (horse trainer had property interest in license). However, under no circumstances can the state action in this case be considered a violation of the Fourteenth Amendment. First, assuming that it is established that an elevated somatic cell count is indicative of disease in the animals being milked, then it is clear that the state has a substantial interest in being able to act quickly to halt the distribution of potentially tainted milk. This is a classic example of a situation in which there is an overriding state interest in protecting the public, and the notice and hearing requirements of due process may be met by after-the-fact hearings. *See*

*Parratt v. Taylor,* 451 U.S. 527, 539, 101 S.Ct. 1908, 1914–15, 68 L.Ed.2d 420 (1981); *Barry v. Barchi,* 443 U.S. at 64, 99 S.Ct. at 2649. In this case, that is precisely what happened: after a hearing the plaintiffs had their license restored on May 8, 1987.

■■■ Plaintiffs maintain, however, that an elevated somatic cell level, while indicative of mastitis in cows, does not indicate disease in goats; that the officials of VDH are aware of this; and that defendant Mays, the VDH official who sent the notice of suspension, acted intentionally in suspending their license without just cause. Assuming this to be the case, plaintiffs still have not made out a violation of due process because "an unauthorized intentional deprivation of property does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 3203–04, 82 L.Ed.2d 393 (1984). Nor does a *negligent* act of a state official causing unintended loss of life, liberty, or property violate the Due Process Clause. *Daniels v. Williams,* 474 U.S. at 330–1, 106 S.Ct. at 664–5. This is simply because the state is incapable of foreseeing intentional or negligent conduct by its employees, and thus there can be by definition no notice or hearing. Whether due process requirements have been met is therefore determined by the adequacy of the state's postdeprivation procedures. *Hudson v. Palmer,* 468 U.S. at 533, 104 S.Ct. at 3203–04. The Court has made it very clear, furthermore, that the Constitution is not to be used as a substitute for traditional state tort law, *Daniels v. Williams,* 474 U.S. at 333, 106 S.Ct. at 666, particularly, it appears, where there is a state tort claims act which provides a remedy. *Id.; Hudson, supra,* 468 U.S. at 539, 104 S.Ct. at 3207 (O'Connor, J., concurring) ("When adequate [state.law] remedies are provided and followed, no uncompensated taking or deprivation of property without due process can result"); *Parratt v. Taylor,* 451 U.S. at 537–44, 101 S.Ct. at 1913–17.

In this case, once again assuming that the Department of Health's actions were unjustified, there could of course have been no predeprivation hearings, and the postdeprivation hearings quickly resulted in the reinstatement of plaintiffs' license. They could not therefore be characterized as anything other than adequate. Moreover, plaintiffs are free to avail themselves of the Virginia Tort Claims Act, Va.Code § 8.01–195.1 *et seq.,* and of course they could at the same time pursue the real meat of their complaint: the slander, conspiracy to injure business relations, and intentional infliction of emotional distress charges.

■■■ As further grounds for finding plaintiffs' claims insubstantial, it should be noted that in *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) the Supreme Court held that the Eleventh Amendment forecloses suits in federal court by private parties seeking to recover a judgment payable out of public funds in a state treasury; i.e., retroactive monetary relief is barred. *Id.* at 663, 94 S.Ct. at 1355. And while prospective injunctive relief is available against state officials in federal court under the rule of *Ex parte Young,* 209 U.S. 123, 52 L.Ed. 714 (1908), since the plaintiffs' license was promptly restored by state officials, there is no continuing violation to enjoin. *See Green v. Mansour,* 474 U.S. 64, 73, 106 S.Ct. 423, 428, 88 L.Ed.2d 371 (1985). *Green* also establishes that in such circumstances plaintiffs are not entitled to a declaratory judgment that the state violated federal law in the past. *Id.*

For all the above reasons, the court concludes that it is without jurisdiction to entertain the plaintiffs' federal claims. Consequently, it is without jurisdiction to hear the pendant state law claims. Accordingly, the defendants' motion for summary judgment is granted, the complaint is dismissed, and the case is stricken from the docket of this court. An appropriate Order will enter this day.