## JAMES B. KENLEY, M.D., ETC., ET AL.

### V.

## CHRISTINE SOLEM

Record No. 860559

January 13, 1989

Present: Carrico, C.J., Poff,* Compton, Stephenson, Russell, Thomas, and Whiting, JJ.

---

* Justice Poff participated in the hearing and decision of this case prior to the effective date of his retirement on December 31, 1988.

*John B. Purcell, Jr., Assistant Attorney General (Mary Sue Terry, Attorney General; J. Steven Shepherd, III, Assistant Attorney General*, on brief), for appellants.

*John C. Lowe (Lowe & Jacobs, Ltd.*, on brief), for appellee.

WHITING, J., delivered the opinion of the Court.

In this appeal, we revisit Christine Solem's effort to supply unpasteurized goats' milk to other people without violating a regulation of the Department of Agriculture and Consumer Services forbidding the sale of such milk.

In 1970, the Department, authorized by Code §§ 3.1-530.1 to -530.9 to promulgate "Rules and Regulations Governing the Production, Processing and Sale of Grade 'A' Pasteurized Market Milk Products," promulgated Regulation X, which prohibits the sale of raw milk and milk products. In *Carbaugh v. Solem*, 225 Va. 310, 302 S.E.2d 33 (1983) (*Solem I*), we decided that the regulation prevented Solem from "renting" one of her goats for $3 a day in return for the "by-products" of that goat. The background of Solem's activities with her goats is described in *Solem I*.

After our adverse decision in *Solem I*, in an avowed effort to avoid the restrictions of Regulation X, Solem modified her business operation by selling, rather than renting, undivided interests in her goats. For $50, an individual who wished to receive unpasteurized goats' milk could purchase a 24 percent interest in a goat, which, upon payment of a $3 daily "maintenance" fee, entitled the purchaser to a gallon of milk each day.

Solem then filed this declaratory judgment proceeding against James B. Kenley, State Health Commissioner, and S. Mason Carbaugh, Commissioner of Agriculture and Consumer Services, to determine whether her new plan violated Regulation X. The trial court held that Solem's new arrangement did not violate Regulation X; because Solem sold undivided interests in the goats and charged a maintenance fee for the transfer of milk to the goat owners, the transfer of milk was a mere delivery of the milk and did not constitute its sale.

The interests are sold, the goats maintained, and the milk delivered under the following plan. No more than two such interests are sold in each goat so that Solem retains a 52 percent interest in every one of her goats, as well as their possession. The milk is

distributed to the users from a common container on Solem's property into which all of the goats' milk has been collected. Solem charges each owner a maintenance fee based on the amount of milk that owner receives. No owner receives more than 24 percent of the production of the goat in which he owns an interest and, if the owner does not take all of the 24 percent production, Solem gets the excess as a part of her maintenance fee. The payment of the maintenance fee assumes that the owner will get a gallon of milk a day and, if the goat is not producing enough milk so that 24 percent of her daily production will be at least one gallon, Solem supplies the deficiency from "her share of the goat's milk." If a goat is producing no milk, its owner pays no maintenance fee but, if Solem has milk available from other goats, she will usually supply the milk of another goat and collect the maintenance fee. If an owner's goat does not produce milk over a sustained period and has to be "put down," Solem replaces it with another goat. The record does not disclose whether the owner pays another $50 charge.

■ Here, as in *Solem I*, Solem erroneously focuses upon an alleged sale of an interest in the goat and not on the sale of milk which is the act proscribed by the regulation. Although Solem may have formally transferred an undivided interest in her goats to a user of their milk, the essential, and admitted, purpose of the transaction is to distribute unpasteurized goats' milk in avoidance of the regulation.

■ The owner of the 24 percent interest in a goat does not receive only his goat's milk — it goes into a common container, and he gets milk from all of the goats producing milk on that day. In some instances he may not receive any of his goat's milk. The maintenance fee of $3 per day, geared to the amount of milk each owner receives, is nothing more than a sham for payment for the gallon of milk received by the owner from Solem on that day. We will look to the substance of this transaction and not to its formal trappings. *Valley Acceptance Corp.* v. *Glasby*, 230 Va. 422, 429, 337 S.E.2d 291, 295 (1985). Given the manner in which Solem handles the milk and deals with her consumers, we hold that her distribution of the milk is essentially a sale of milk in violation of Regulation X.

Accordingly, we will reverse the judgment of the trial court and enter final judgment.

*Reversed and final judgment.*