# Staunton

## J. C. Hartsock v. H. C. Powell and Lucille Powell.

September 6, 1957.

Record No. 4674.

Present, All the Justices.

The opinion states the case.

*George M. Warren, Jr.* (*Warren & Warren*, on brief), for the appellant.

*M. E. Burson*, for the appellees.

BUCHANAN, J., delivered the opinion of the court.

■ This suit was brought by the Powells to compel Hartsock, the appellant, to remove two gates which he had placed on his property across a private road leading from the Powell property westward through the land of Hartsock to a public road known as the old Bristol road, and to restrain Hartsock from obstructing the road in any manner in the future. Hartsock conceded in his answer that the Powells had a right to use this road as an established easement over his land, but asserted that it had always had gates on it; that the gates he had erected were necessary to the convenient and reasonable use of his land, and that he had a right to erect and maintain them both under the common law and under what is now § 33-119 of the Code.

After hearing the evidence *ore tenus* the court below entered a decree holding that the road was an open road; that Hartsock had no right to put any obstruction on it, and ordering him to remove the gates and not to place any obstruction of any kind on the road in the future. From this decree Hartsock has appealed.

The decree was entered on July 17, 1956. The notice of appeal and assignments of error was filed September 17, 1956, two days past the sixty days prescribed by Rule 5:1, § 4. On September 22, 1956, the Powells filed with the clerk of the trial court a written demand that he not make up the record or transmit it to this court because of this delay. On October 1, 1956, counsel for Hartsock filed with the clerk below a writing accompanied by an affidavit asserting that the notice was filed in time under the provisions of § 30-5 of the Code. That section provides, so far as here pertinent, that a litigant in any court who has employed an attorney who is a member of the General Assembly is entitled to a continuance for the period therein prescribed "and the period required by any statute or rule for the filing of any pleading or the performance of any act relating thereto shall be extended until thirty days after any such session."

The affidavit was made by Senator George M. Warren, then a member of the General Assembly, now deceased. He stated that he was originally interviewed by Hartsock, was active in preparing the case for trial and expected to participate in the trial but was prevented by illness from doing so; that a special session of the General As-

sembly, which he attended, was convened by the Governor on August 27, 1956, and continued in session until its adjournment on September 22, 1956, and hence the time for filing the notice was extended for thirty days from the latter date by the terms of the statute.

The appellees made no motion to dismiss the appeal but did file a brief in opposition to granting it on the ground, among others, that the notice was not filed in time. In the argument of the case at bar their counsel did not argue this point but did not waive it. The notice of appeal and assignments of error was filed within the time allowed by the statute and we take jurisdiction in this instance to decide the case on its merits.

It is undisputed that the road in question is a private road. Its origin is not disclosed by the evidence and apparently is unknown. It has been in existence for many years, but there is no evidence as to when, why or how it originated.

The complainants (Powells) introduced a number of deeds which indicate that the lands owned by both parties, as well as neighboring tracts, were originally part of a tract granted to one Lindamood who conveyed the eastern part, which included the land now owned by the Powells, to Conley. It is asserted in appellees' brief, without supporting evidence however, that after this conveyance the Conley land was surrounded by the lands of others and that the only outlet to the public road was over the remaining lands of Lindamood, from which the Hartsock property came.

The first reference to the road among the deeds in evidence was in a deed made in 1904 to a predecessor in title of the Powells, in which the 22 acres thereby conveyed is said to be "divided by a road leading from the public road N. E. to Newton Hawkins line". It was also referred to in several subsequent deeds in the Powell chain of title; and in the deed to the Powells dated May 16, 1953, for the 22 acres now owned by them, it is referred to in the same way as in the 1904 deed to their predecessor. It was also referred to in a deed made in 1905 by Mumpower, predecessor in title of Hartsock, to trustees for a church lot on the Hartsock property. The church was abandoned several years ago and the lot reverted and is part of the Hartsock land. The road was referred to also in describing two other small tracts conveyed by Mumpower to another grantee in 1923. But, as stated, no deed describes the road or defines its use or shows its origin.

The appellees contend that this road was a way of necessity. We

do not think that is material in this case, but in any event the evidence does not support that contention. To the contrary, it is shown that this road until recent years extended on through and from the property now owned by the Powells to another road on the east, known as the Wallace road. East of the Powell property this road was blocked, or obstructed, by the Powell's predecessors and by owners of the Hawkins land farther east; and the Powells now maintain a fence in the middle of it along the south side of their property to where the road enters the Hartsock property.

In *Davis* v. *Wilkinson*, 140 Va. 672, 125 S. E. 700, in circumstances similar to those present in this case, and where the road had existed for more than forty years without any evidence to show how it originated, it was held that there was no way of necessity but a right of way by prescription. A right of way of necessity will not be decreed unless the evidence showing the need therefor is clear and convincing, and it does not arise if there is another way of access although less convenient or more expensive to develop. *Jennings* v. *Lineberry*, 180 Va. 44, 48-9, 21 S. E. 2d 769, 771.

[■] Most of the evidence in this case was addressed to the question of whether there had ever been gates or bars on this road. Admittedly there was none when the appellees got their deed in 1953, or when Hartsock bought his property in 1952. A witness for the appellees lived on the land from 1932 to 1938 and he said there were no gates across the road then, but he admitted that there were gates on the road when he was a small boy. Others remembered no gates but did remember a bar or bars. Mrs. Duncan, whose land adjoins the Powell land, had lived on her property for nine years and she said there were no gates or bars until Hartsock put up the gates in question. Dotson, another user of the road, said there had been no obstructions on the road in the ten years he had lived on his land, but admitted that there were some old hinges on a post at the point where Hartsock placed the western gate; and these hinges had also been seen by Stipes, whose land, bought in 1950, adjoined Hartsock on the east.

On the other hand, six witnesses for the appellant testified to the existence of gates and bars on the road at intervals as far back as fifty years and more. Mrs. Helbert had lived on the Stipes place for thirty years prior to 1946 and there were gates during that time at the places where Hartsock now has them. Ray Mumpower, who adjoins Hartsock on the west, said there were gates there when he

bought his property in 1922 and had been prior to that time, and he had himself put them in repair from time to time. Mrs. Felty lived on the Dotson property from 1900 to 1923 and there were gates on the road then. Another Mrs. Felty had lived on the Stipes property sixty-two years and said there were always poles or something across the road then, and she had "no memory of it ever being open very much." Two other witnesses, both past sixty years old, testified they had known the road all their lives and there had been gates, bars and similar structures at places on the road during the time they had known it.

The evidence is convincing that there have been gates or like structures on this road at least intermittently until recent years for about as long as the road itself has existed. The area through which this road runs is farming and grazing land and it is doubtless true that there have been periods, particularly in the more recent times, when the need for gates did not exist and they were not used. There were, as stated, no gates in 1952 when Hartsock bought his land, which is a tract of 101 acres, about fifteen acres of which are on the north side of the road and eighty-six acres on the south side. The only water on the place is on the tract north of the road. He desired to pasture cattle on the land and in order to give them access to water and at the same time to prevent them from straying into the roads and from trespassing on other property, he erected the two gates in question at points at which his fences extended to the road on each side thereof, the gates being 578 feet apart.

The applicable common law rule is thus stated in *Davis* v. *Wilkinson, supra*, 140 Va. at 681-2, 125 S. E. at 703, quoting from Jones on Easements:

"The rule is general that the landowner may put gates and bars across a way over his land, which another is entitled to enjoy, unless, of course, there is something in the instrument creating the way, or in the circumstances under which it has been acquired or used, which shows that the way is to be an open one. The easement of way is for passage only. The land remains the property of the owner of the servient estate and he is entitled to use it for any purpose that does not interfere with the easement."

This rule was repeated and applied in *Good* v. *Petticrew*, 165 Va. 526, 533, 183 S. E. 217, 219, and in *Carpenter* v. *Stapleton*, 169 Va. 22, 30, 192 S. E. 792, 795. See also *Mitchell* v. *Bowman*, 74 W. Va. 498, 82 S. E. 330.

In *Good* v. *Petticrew, supra,* it was said that the right of the appellees there to maintain gates under the circumstances of that case, which are similar to those here, was well settled at common law and also under the statute. The statute there referred to was § 2039 (26) of the Code of 1930, which was § 2009 of the Code of 1919 and which was first enacted as ch. 666, Acts of Assembly, 1895-96, page 725. As amended it is now § 33-119 of the 1950 Code, which provides:

"Any person owning land over which another or others have a private road or right of way may, except when it is otherwise provided by contract, erect and maintain gates across such roads or right of way at all points at which fences extend to such roads on each side thereof; * *."

In the present case there was no instrument granting the way nor any contract defining the rights of the owner of the dominant estate or limiting the rights of the owner of the servient estate. Neither is there evidence of circumstances which show the way was to be or is an open way. It is shown to the contrary that at or for many years after its origin it was frequently obstructed by gates or bars. The evidence which establishes a prescriptive right in the appellees wholly fails to establish a prescriptive right of open use unobstructed by gates. Both at common law and under the statute the appellant had the right to erect gates at the places where he put them.

In the appellant's brief he states that the gates he erected, commonly called "wire gaps", are sometimes difficult to operate and that he "stands ready and willing to replace them with hinged, wooden or metal gates, as he has previously offered to do."

The decree appealed from is reversed, the injunction is dissolved and final decree will be entered here directing the change in the gates according to the appellant's offer.

*Reversed and final decree.*