## Richmond

STEPHEN J. CRAIG, ET AL. v. JOHN BOWMAN KENNEDY.

April 24, 1961.

Record No. 5201.

Present, All the Justices.

The opinion states the case.

*Philip Lee Lotz*, for the appellants.

*G. H. Branaman*, for the appellee.

I'ANSON, J., delivered the opinion of the court.

■ This suit was brought by John Bowman Kennedy, the appellee herein, against Stephen J. Craig and Myrtle L. Craig, the appellants, to compel the Craigs to remove a gate which they placed on their property across the entrance to a private roadway leading from secondary State highway No. 612 northeastward through their lands to the adjoining lands of Kennedy, and to restrain the Craigs from obstructing the right of way in any manner in the future. The verified bill alleged that Kennedy was entitled to use the roadway as an easement both by prescription and necessity, and a temporary injunction was awarded restraining the Craigs from interfering with Kennedy's use of the right of way, but they were not ordered to remove the gate. An amended bill, filed after much of the evidence had been heard, alleged that the road was a public way.

After a hearing on depositions and the exhibits filed therewith, the chancellor viewed the premises and entered a decree holding that Kennedy has an easement in the roadway and ordering that the temporary injunction be made permanent; that the Craigs remove the gate and not again erect a gate or otherwise obstruct the entrance to the right of way; that Kennedy erect a suitable cattle guard or gate across the roadway where the properties of the parties join; and further holding that if the Craigs or their successors in title so elect they may install an adequate and substantial cattle guard at the roadway entrance, along with a gate to the east of the cattle guard. From this decree the Craigs have appealed and Kennedy has not assigned cross-error. Thus, the question of whether the roadway is a public road is not before us and we need only consider Kennedy's rights in it as a private way. Rule 5:1, § 4, Rules of Court.

The Craigs contend (1) that Kennedy does not have an easement in the roadway either by prescription or necessity, and (2) that even if Kennedy does have an easement they have a right to erect and maintain the gate across the entrance to the roadway.

The lands involved are located in Augusta county and were all owned by John Koiner at the time of his death, testate, in January 1852. In March, 1852, the executors of Koiner's estate sold 98 acres of his farm land to one of Kennedy's predecessors in title, and Kennedy acquired this tract in June 1947. In 1876 Koiner's executors sold what is known as the "Crimora mill" property, containing 104 acres, of which 19.51 acres were acquired by the Craigs in August 1957.

Thirty-five acres of Kennedy's lands, which he refers to as bottom

lands, are cut off from the rest of his farm by a high limestone bluff and no part of this acreage touches on a public highway. Five acres of the Craig property front on the north side of secondary highway 612 and join the Kennedy bottom lands on the east and, in part, on the north. The remaining 14.51 acres owned by the Craigs front on the south side of the highway.

The only road providing access to the Kennedy bottom lands leads from highway 612 northeastward, through the 5-acre tract owned by the Craigs, for a distance of approximately 300 feet.

A plat of a part of the Koiner lands, dated September 16, 1851, which has never been recorded but was delivered to Kennedy by his predecessor in title when he purchased the property, shows a road leading from what is now highway 612 through the 5-acre mill tract to the bottom lands. The road continues eastward for more than a mile, where it intersects another public road, but the evidence shows that this part of the road was abandoned by non-use more than forty years ago.

The first deed of record which mentions an easement or right of way over a road is found in the chain of title to the Craig property. A deed dated February 19, 1943, from Mary C. Bolick to W. F. Shaver, conveying 19.51 acres in two parcels of 5 acres and 14.51 acres, respectively, contains the following language:

"It is understood and agreed, however, that this conveyance is made subject to any easements, rights of way or privileges as to any telephone and electric pole lines and roads, in, over and across the property herein conveyed."

The above quoted language is also found in a deed dated February 17, 1956, from Shaver to Ella H. Benson. The deed from Ella H. Benson to the Craigs, dated August 1, 1957, did not contain the quoted language.

The appellant concedes that a part of the road shown on the plat of 1851 and the one referred to in the above mentioned deeds is the same road now in dispute, since there is no other road on the 5-acre tract.

Within a year after the Craigs took title to the property they enclosed the 5-acre mill tract with a barbed wire fence and erected a gate, 14′ 8″ in width, on their property across the roadway entrance, at a point approximately 18 feet north of the edge of route 612. They stated that the purpose of the gate and fence was to keep their cattle within the enclosed area, to keep trespassers off their property, and to

protect property stored in the old mill building located on the east side of the right of way approximately 50 feet north of route 612.

Stephen Craig testified that before he acquired the property he saw the road in dispute running through it to Kennedy's land, and he has never questioned Kennedy's right to use the roadway. Before erecting the gate he told Kennedy he would like to put in a cattle guard at the entrance to the right of way if it was satisfactory with him. Kennedy objected to the cattle guard and then Craig erected the gate.

The evidence shows that the roadway in dispute has been in existence for more than 100 years. When it first came into existence, or by whom it was established, does not appear in the record. There is no evidence that the roadway has ever had bars or gates across its entrance until Craig erected the gate which brought on this litigation. Kennedy has moved farm machinery and cattle over it hundreds of times each year since 1925. He first farmed the bottom lands, and used a part of them for cattle grazing, as a tenant, and after 1947 as owner. There have been seven different owners of the 5-acre mill tract since Kennedy first used the roadway as a means of access to and from the bottom lands, and his right to use it free of obstructions was never questioned until the Craigs acquired the property.

D. B. Kromer, a tenant on the land of Kennedy's predecessor in title from 1911 to 1925, farmed the bottom lands and used the road as a means of moving farm equipment to and from the property.

The Craigs contend, however, that Kennedy does not have an easement in or right of way over the road either by prescription or necessity. They argue that Kennedy's use of the road was permissive and not under a claim of right.

The general principles of law applicable to easements have often been before this Court, and the law in Virginia is well settled.

In order to establish a private right of way over the lands of another by prescription it must appear that the use of the roadway by the claimant was adverse, under claim of right, exclusive, continuous, uninterrupted, and with knowledge and acquiescence of the owner of the land over which it passes, and that such use has continued for a period of at least twenty years. *Powell* v. *Magee*, 191 Va. 315, 321, 60 S. E. 2d 897, 900; *Williams* v. *Green*, 111 Va. 205, 207-208, 68 S. E. 253, 254.

We have said many times that "Where there has been an open, visible, continuous and unmolested use of a road across the land of

another for at least twenty years, the use will be presumed to be under claim of right, and places upon the owner of the servient estate the burden of rebutting this presumption by showing that the use was permissive, and not under a claim of right." *Powell* v. *Magee, supra; Rives* v. *Gooch,* 157 Va. 661, 663, 162 S. E. 184; *Davis* v. *Wilkinson,* 140 Va. 672, 675, 676, 125 S. E. 700, 701, 702.

The evidence is uncontradicted that the use of the roadway through the 5-acre mill tract by Kennedy and his predecessors in title was open, visible, continuous, and without objection from any of Craig's predecessors in title. The Craigs have not presented evidence to rebut the presumption that the road was used by Kennedy and his predecessors in title for at least twenty years under a claim of right. There is not one scintilla of evidence that the use of the roadway was merely permissive. Hence, Kennedy and his predecessors acquired an easement of right of way in the disputed roadway by prescription.

In view of our conclusion that Kennedy acquired an easement by prescription it is unnecessary for us to discuss whether he acquired an easement by necessity. Suffice it to say that there is much evidence to support the view that he did acquire an easement by necessity.

The Craigs next contend that even if Kennedy has an easement in the roadway, they, as owners of the servient estate, have the right under § 33-119[1], Code of 1950, 1953 Replacement Volume, to erect a gate across the right of way.

Section 33-119 reads as follows:

"Any person owning land over which another or others have a private road or right of way may, except when it is otherwise provided by contract, erect and maintain gates across such roads or right of way at all points at which fences extend to such roads on each side thereof; provided, however, that a court of competent jurisdiction may, upon petition, where it is alleged and proved by petitioner that the gates have been willfully and maliciously erected, may require the said landowner to make such changes therein as may be necessary and reasonable in the use of said roads for both the landowner and the petitioner."

In this case it has not been alleged or proved that the gate was willfully and maliciously erected. There is no instrument granting Kennedy a right of way over the road or any contract defining his rights as the owner of the dominant estate. The provision in the several

---

[1] This statute was first enacted as ch. 666, Acts of Assembly, 1895-96, p. 725, and was later § 2009, Code of 1919, § 2039(26), Code of 1930, as amended.

deeds conveying the servient estate subject to any easement in the road does not constitute a contract between Kennedy and the owner. Kennedy was not a party to any of the deeds. Moreover, the language in the deeds does no more than recognize the existence of an easement in the roadway.

Code § 33-119 gives the Craigs the right to erect and maintain a gate across the entrance to the right of way, irrespective of the length of time the road has been in existence or the manner in which it has been used, since there is no instrument or contract providing otherwise. See *Terry* v. *Tinsley*, 140 Va. 240, 246, 247, 124 S. E. 290, 292; *Good* v. *Petticrew*, 165 Va. 526, 533, 534, 183 S. E. 217, 220; *Hartsock* v. *Powell*, 199 Va. 320, 325, 99 S. E. 2d 581, 585.

Section 8-873.1, Code of 1950, 1957 Replacement Volume, permits the owner of property on which there is a road or way, not a public road, a highway, street or alley, over which an easement exists for ingress and egress of others, to place cattle guards or gates across such way when required for the protection of livestock.

However Code § 8-873.2, Code of 1950, 1957 Replacement Volume, permits any person having an easement of right of way across the land of another to replace, at his own expense, any gate with a cattle guard to turn livestock. This section reads as follows:

"Any person having an easement of right of way across the lands of another, may, at his own expense, replace any gate thereon with a substantial cattle guard sufficient to turn livestock. Said cattle guards shall be maintained and kept in good repair by the owner of the easement; provided that if the gate to be replaced is needed or used for the orderly ingress and egress of horse drawn equipment or any equipment drawn by any other draft animal or for the passage of animals thereof, then such persons acting under the authority of this section shall construct such cattle guards so as to allow the crossing or passage of aforesaid referred to equipment and animals; or if such easement is of sufficient width, may place such cattle guard adjacent to such gate."

The evidence shows that Craig proposed to Kennedy that he be permitted to put a cattle guard across the entrance to the right of way, and when Kennedy objected Craig erected the gate. It can therefore be considered from the evidence that a cattle guard across the right of way will serve Craig's purpose of keeping his cattle within the 5-acre enclosed area, and that the additional reason assigned by him for erecting the gate, to keep trespassers off his property, is of

no moment. Hence, Kennedy shall be permitted to replace the present gate at the roadway entrance with a cattle guard, or cattle guard and gate, if he so elects, pursuant to Code § 8-873.2.

For the reasons given, the decree of the court below is modified to provide that Craig may maintain at the roadway entrance a suitable, substantial and unlocked gate, which can be easily opened and closed; and that Kennedy may, if he so elects, at his own expense, replace the gate with a suitable and substantial cattle guard or cattle guard and gate across the roadway entrance, and maintain the same, in accordance with Code § 8-873.2.

Kennedy having substantially prevailed in this appeal, the costs incurred shall be borne by the Craigs.

*Modified and affirmed.*