### Richmond

WILLIAM E. MARTIN

v.

LORRIMER C. PROCTOR, ET AL.

Record No. 811178.

March 9, 1984.

Present: All the Justices.

*Eugene M. Jordan* for appellant.
No argument or brief for appellees.

POFF, J., delivered the opinion of the Court.

The dispositive issue raised on this appeal is whether the chancellor erred in decreeing that Lorrimer C. Proctor and Marion Wornom Proctor, his wife, complainants below, had acquired a right of way by prescription across an adjacent lot owned by William E. Martin.

The Proctors and Martin derived title to their lots from a common source. W. C. Wornom owned a tract of land 150 feet deep and fronting approximately 622 feet along the southern line of Old Point Avenue. Shaped as a parallelogram with the short legs bearing northeast, the tract was bounded on the west by Boxwood Street and on the south and east by the Hampton Golf and Country Club. In 1928, Wornom subdivided the tract without benefit of a survey. During his lifetime, he conveyed some of the lots to some of his children and, at his death, devised the remainder to his children, subject to a life estate granted his widow in the "homeplace" located in the northwest corner of the tract. In 1956, following Wornom's death in 1955, his widow and children had the entire tract surveyed and executed a deed memorializing the boundaries reflected on the plat. The plat showed eight lots numbered consecutively from west to east.

In 1934, Wornom had conveyed lot 3, designated below as the dominant tenement, to his daughter, Marion Wornom Proctor. Marion and her husband, who were then living with her parents at the homeplace on lot 1, began construction of their own home facing Old Point Avenue. About the same time, Wornom graded and opened an "alleyway or road" extending from Boxwood Street to Old Point Avenue along the southern and eastern boundaries of the tract. This alley was not mentioned in the 1956 deed or depicted on the plat.

Wornom devised lot 2, the servient tenement, to another daughter, Virginia Wornom Shockley, who later conveyed it to her brother, Percy Wornom. Percy died intestate in 1972, and Martin acquired lot 2 from Dorothy D. Wornom, Percy's widow and sole heir at law, in 1978.

Evidence presented to a commissioner in chancery showed that W. C. Wornom used the alley for 21 years before his death. W. C. Wornom, Percy Wornom, and Lorrimer Proctor maintained the roadbed for their own use and for the use of other members of the family living or visiting in the subdivision. The alley was also used for vehicular and pedestrian travel by garbage

collectors, patrons and employees of the country club, and other strangers.

Mr. Proctor testified that he had always used the alley across lots 1 and 2 as a means of access from Boxwood Street to his garage located behind his residence on lot 3.* He had done so on a daily basis since the alley was opened in 1934. He had sought and received no express permission from his father-in-law or other owners of lot 2 and had encountered no hindrance until 1978 when Martin erected a fence across the alley where he planned to install a swimming pool. Mrs. Proctor said that she "never had any agreements with [her] dad, or anybody" concerning use of the alley. In response to a question on cross-examination, however, she acknowledged that she "knew that [she] had his permission to use it". Virginia Wornom Shockley and Dorothy D. Wornom, Martin's predecessors in title, testified to similar effect.

Martin first became interested in acquiring lot 2 while it was still owned by Percy Wornom. Martin testified that Percy told him that the lot "goes back to the golf course" and that "he was letting [Mr. Proctor] use [the alley] because he was married to his sister." After Martin purchased the lot in 1978, he had a conversation with Mr. Proctor who said, "Friend Martin, I hope you'll continue to let me drive through back here." Martin "offered to spend Eight Hundred Dollars to give the man a driveway" from Old Point Avenue to his garage, but because this would have required removal of several trees, the Proctors refused and filed suit claiming an easement in the alley across Martin's lot and seeking injunctive relief.

The commissioner reported that "the evidence sustains the establishment of a right-of-way by prescription", the chancellor overruled exceptions to the report and entered a decree in favor of the Proctors, and we granted Martin an appeal.

To acquire a prescriptive easement, a claimant must prove that his use was, *inter alia*, made under a claim of right. Proof of other characteristics of the use may suffice to raise a presumption of claim of right, but that presumption is rebuttable, and proof that the use was permissive defeats the claim.

In order to establish a private right of way over the lands of another by prescription it must appear that the use of the

* The alley east of lot 3 had been blocked at several points, and the Proctors, who had acquired lot 1 as well as lot 3, claimed an easement only where the alley crossed lot 2.

roadway by the claimant was adverse, under claim of right, exclusive, continuous, uninterrupted, and with knowledge and acquiescence of the owner of the land over which it passes, and that such use has continued for a period of at least twenty years. [Citations omitted].

We have said many times that "Where there has been an open, visible, continuous and unmolested use of a road across the land of another for at least twenty years, the use will be presumed to be under claim of right, and places upon the owner of the servient estate the burden of rebutting this presumption by showing that the use was permissive, and not under a claim of right." [Citations omitted].

*Craig* v. *Kennedy*, 202 Va. 654, 657-58, 119 S.E.2d 320, 322-23 (1961).

■ When the use originates by permission, it is presumed to continue with permission unless the conduct of the user is sufficient to apprise the owner of the servient tenement that the user is asserting a claim adverse and hostile to his rights.

An easement will not arise by prescription simply from permission of the owner of the servient estate, no matter how long the permissive use may continue. [Citations omitted]. And having begun by permission, it will, in the absence of some decisive act on the part of the owner of the dominant estate indicating an adverse and hostile claim, continue to be regarded as permissive, especially when the latter's use of the easement is in common with its use by others. [Citations omitted].

*Witt* v. *Creasey*, 117 Va. 872, 876, 86 S.E. 128, 129 (1915).

Absent such a decisive act on the part of a neighbor using a road opened by a landowner for his own use, the neighbor can never acquire a prescriptive easement.

We believe it to be perfectly well settled that where the owner of land opens a way thereon for his own use and convenience, the mere use by his neighbor under circumstances which neither injures the way nor interferes with the owner's use of it, in the absence of some other circumstances indicating a claim of right, will not be considered as adverse, and will never ripen into a prescriptive right. In order to ripen

into a prescriptive right, the claim to the use of the way must be adverse — that is, not accorded as a mere accommodation, but asserted under a claim of right hostile to the rights of the owner of the servient estate, so as to expose the claimant to an action if his claim is not well founded. If it be fairly shown that the use is permissive in its inception, it will never by mere lapse of time ripen into a hostile right.

*Wall* v. *Landman*, 152 Va. 889, 895, 148 S.E. 779, 781 (1929) (citations omitted), *quoted with approval in Eagle Lodge* v. *Hofmeyer*, 193 Va. 864, 878, 71 S.E.2d 195, 203 (1952).

█ Applying the rules in these cases to the facts in evidence, we consider first whether the Proctors acquired a prescriptive easement while lot 2 was owned by W. C. Wornom. Prior to Wornom's death, the Proctors' use of the alley was "open, visible, continuous and unmolested" for 21 years, and under the rule in *Craig*, such use raises a presumption of claim of right. But the presumption is effectively overcome by what we consider conclusive proof that the use began and continued throughout with permission implied in law. The alley was opened by the owner of lot 2 for the benefit of his children and "for his own use and convenience". *Wall* v. *Landman, supra.* The alley was used by the family "in common with its use by others." *Witt* v. *Creasey, supra.* Wornom was Mrs. Proctor's father, and use by a child of land owned by its parent is regarded as permissive, absent "some 'clear, definite, or unequivocal notice' of the child's intention to assert exclusive ownership." *McIntosh* v. *Fire Company*, 220 Va. 553, 557, 260 S.E.2d 457, 460 (1979) (adverse possession) (quoting *Edmunds* v. *Pike*, 136 Va. 270, 274, 118 S.E. 91, 92 (1923)). And the record reveals no evidence whatever that the Proctors' use of the alley was sufficient to notify Wornom that they were asserting a claim adverse and hostile to his rights.

Accordingly, we hold that the Proctors' use during Wornom's lifetime was insufficient to support their claim.

█ Nor do we believe the Proctors acquired a prescriptive easement in the period following Wornom's death. Although they used the alley across lot 2 continuously for another 23 years before Martin erected the fence, the use was permissive in its inception and, since there was no evidence of any "decisive act on the part of the [Proctors] indicating an adverse and hostile claim", *Witt* v. *Creasey, supra*, it remained permissive. During

this period, lot 2 was owned by Marion Proctor's sister and, later, by her brother and sister-in-law. Without proof to the contrary, use of an easement is not considered "adverse" when made "by near relatives who were on friendly terms". *Markham* v. *Hall*, 215 Va. 683, 693, 212 S.E.2d 302, 308 (1975). Here, there is no proof to support a contrary conclusion.

We hold, therefore, that the commissioner's finding and the chancellor's ruling are contrary to the evidence, and we will reverse the decree and enter final judgment for Martin.

*Reversed and final judgment.*