## CIRCUIT COURT OF WARREN COUNTY

Robert L. Stallard

v.

Nevil Bull et al.

May 10, 1993

Case No. (Chancery) 93–9

BY JUDGE JOHN E. WETSEL, JR.

This case came before the court for trial on April 28 and May 5, 1993, on the issue of whether the Complainant Stallard has a prescriptive easement over the Defendants Bull's property in a rural area of Warren County, Virginia. The Complainant's counsel, Joseph A. Massie, Jr., appeared on April 28, 1993, and the Complainant and his counsel appeared on May 5, 1993. The Defendant appeared with his counsel, Edward F. Greco, on both dates. Evidence was heard *ore tenus*, and upon consideration whereof, I have made the following decision.

### I. *Findings of Fact*

The following facts are found by clear and convincing evidence.

The Plaintiff is the owner in fee simple of a tract of land situated partly in Warren County and partly in Frederick County, Virginia, containing approximately 65 acres. The tract adjoins the land of the Defendants Bull on three sides. *See* the plat attached to Defendant's Exhibit 3.

There is a roadway approximately 10 feet wide which begins at a mobile home on the Stallard's property and crosses the Bull lot. The private road travels a distance of approximately 400 feet from a gate in the common boundary between Stallard and Bull to the southwest corner of the Bull lot where it meets a country lane which Stallard and Bull share which leads about 4/10's of a mile to Route 627. The road is now a clearly-defined, single-lane, dirt road at least insofar as it

leads from the driveway servicing the residence on the Bull lot to the mobile home on the Plaintiff's property. The condition of the road as shown in the Plaintiff's exhibits is better than it has been at times in the past because at times, the grass in the road and alongside it has been almost a foot or so high. *See* Defendant's Exhibit 7. This road is the sole means of access to and from a public road and a mobile home which the Plaintiff and their predecessors in interest have maintained on their property.

The mobile home is within 100 yards of the rear of the Stallard residence and is closer to that residence than it is to the Bull residence.

The road in controversy is highlighted in green on the plat attached to Defendant's Exhibit 6. Its course and present condition is shown in Plaintiff's Exhibits 1, 3, 5, and 6.

On January 2, 1971, Mr. and Mrs. Fred Dennison purchased the larger portion of land from which the Plaintiff and the Defendants' property was subdivided.

On January 2, 1971, after being conveyed the larger parcel by the Shaws, the Dennisons then conveyed to Mr. and Mrs. Vivian Shaw, the Defendants' predecessors in interest, the 5.5 acre parcel which is presently owned by the Defendants Bull. The road is not shown on the plat attached to the Shaw deed, nor is it referred to in their deed.

Approximately six months after the January 2, 1971, conveyances, the Dennisons moved a mobile home from the public road across the 5.5 acre lot then owned by the Shaws along the present roadway now in dispute to its present location. The transportation of the trailer over the road and the 5.5 acre lot was done with the permission of the Shaws.

After the mobile home was placed on the Dennisons' property, the Dennisons' stepson lived in this mobile home, and the stepson initially used the road with the Shaws' permission.

About six months after the Dennisons placed the mobile home on their property, the Shaws objected to the use of the road across their property and put a gate across the right-of-way leading to the mobile home occupied by the Dennisons' stepson, and Fred Dennison removed this gate. Shortly thereafter, Mr. Shaw placed a large log or tree across the roadway blocking it, which Mr. Dennison pulled away.

After Mr. Dennison's stepson moved from the property, a tenant of Mr. Dennison occupied the mobile home and used the road. Dennison also used the road to transport agricultural equipment incident to his

farming operation and also drove trucks which he used in his business over the road.

From January, 1975, through October, 1976, the Dennisons did not live on the property because they had purchased another residence. During this period of time, the trailer was unoccupied, and the Dennisons returned to the property occasionally to inspect it and mow it. On these occasions, they sometimes used the disputed road.

In 1976, the Dennisons sold their 65.35 acre parcel to plaintiff Stallard. In August, Mr. Stallard moved onto the property and began living in the mobile home. Shortly after he moved onto the property, Mr. Shaw came to see him and told him that he did not want Stallard to use the road in question. Thereafter, the relationship between the Stallards and the Shaws was cool, and they rarely spoke to each other.

After acquiring the property in October, 1976, Mr. Stallard lived in the mobile home for several years, regularly using the road. Thereafter, the Stallards leased the mobile home on the property to various tenants, and the sole access to and from the mobile home has been at all times since it was placed upon the property in 1971 along the roadway that is now in dispute. The occupancy of these tenants has not been continuous, and the mobile home is presently unoccupied.

In the winter of 1978–79, Mr. Shaw pounded some steel pipes in the ground in the location shown in plaintiff's Exhibit 3 blocking the road. These pipes were removed, and Mr. Shaw then had some steel rods driven into the ground at the same location which blocked the road but which were also removed. While both the pipes and the rods were in the ground, they effectively blocked vehicular use of the road.

## II. *Conclusions of Law*

*Open, Uninterrupted, Continuous and Exclusive Use for More Than Twenty Years Establishes a Prima Facie Case of Prescription.*

It is well established that:

> Where there has been an open, visible, continuous and unmolested use of a road across the land of another for at least twenty years, the use will be presumed to be under claim of right, it places upon the owner of the servient estate the burden of rebutting this presumption by showing that the use was permissive and not under a claim of right. *Martin v. Proctor,* 227 Va. 61, 65, 313 S.E.2d 659 (1984) quoting with approval

*Craig v. Kennedy*, 202 Va. 654, 657–58, 119 S.E.2d 320, 322–23 (1961) . . . .

[F]ailure to show the origin of the use raises a presumption that the easement originated either adversely or by grant, the presumption only arises after proof that "a way has been used openly, uninterruptedly, continuously and exclusively for a period of more than twenty years . . . ." *McNeil v. Kingrey*, 237 Va. 400, 404, quoting with approval *Williams v. Green*, 237 Va. 205, 208, 68 S.E. 253 (1910).

This presumption is *prima facie* only, and it may be rebutted by the owner of the servient tract. *Markham v. Hall*, 215 Va. 683, 212 S.E.2d 302 (1975).

*Owner of the Servient Tract Must Acquiesce to the Prescriptive Use.*

The general rule in Virginia is set forth in *Markham v. Hall*, 215 Va. 683, 691–692, 212 S.E.2d 302 (1978):

The law in Virginia applicable to easements by prescription is well settled. "In order to establish a private right of way over the lands of another by prescription, it must appear that the use of the roadway by the claimant was adverse, under claim of right, exclusive, continuous, uninterrupted, and with knowledge *and acquiescence of the owner of the land over which it passes and that such use has continued for a period of at least twenty years.*" *Craig v. Kennedy*, 202 Va. 654, 657, 119 S.E.2d 320, 322–23 (1961). Where a way has been used exclusively, openly, without interruption, and continuously "for a period of more than twenty years, the origin of the way not being shown, *there is a presumption of a right or grant from the long acquiescence of the party upon whose land the way is.*" *Williams v. Green*, 111 Va. 205, 207, 68 S.E. 253, 254 (1910). This presumption of a grant or adverse right is merely prima facie and may be rebutted. *Id.*; 2 Minor on Real Property § 987 (2d ed. F. Ribble 1928). *Accord, Causey v. Lanigan*, 208 Va. 587, 590, 159 S.E.2d 655, 658 (1968); *Reid v. Garnett*, 101 Va. 47, 52, 43 S.E. 182, 184 (1903). (Emphasis added.)

In Virginia, "the title by prescription is based entirely upon the presumption of a grant, lost or destroyed by lapse of time, and upon the

further rather strained assumption that the owner's mere protests subsequently made, rebut the presumption of a previous grant, [and] the doctrine seems established that such protests destroy the prescriptive title of the adverse claimant." Minor on Real Property (Ribble ed.), vol. 2, § 991. This principle was applied in *Reid v. Garnett*, 101 Va. 47, 52, 43 S.E. 182 (1903), a prescriptive easement case, in which the Supreme Court stated:

> [P]roof of adversary possession for twenty years, such as would create the presumption of a grant, was only presumptive and not conclusive, and might be rebutted by evidence showing that the adversary use and enjoyment relied on was not acquiesced in but the right was contested and that the denial of the claimant's right by the landowner as well as action against him putting the right in issue, was proper evidence to show nonacquiescence on the part of the landowner.

Accord Annotation *What Will Disprove Acquiescence by Owner to Easement by Prescription in Case of Known Use*, 5 A.L.R. 1325 (1920). "[A]ny unambiguous act of the owner of the land which evinces his intention to exclude others from the uninterrupted use of the right claimed breaks its continuity so as to prevent the acquisition of an easement therein by prescription." 25 Am. Jur. 2d, *Easements and Licenses*, § 57.

"The foundation of a right by prescription is acquiescence of the owner of the servient tenement in the acts relied on to establish the easement by prescription. Acquiescence is here used in its ordinary sense; it does not mean license or permission in the active sense, but means passive assent or submission, aquiescence, or consent by silence." 25 Am. Jur. 2d, *Easements and Licenses*, § 61. In other contexts, the Supreme Court of Virginia has said that "acquiescence . . . is . . . the failure to protest or object." *Stanley's Cafeteria, Inc. v. Abramson*, 226 Va. 68, 74, 306 S.E.2d 870 (1983); *accord, May v. Martin*, 205 Va. 397, 404, 137 S.E.2d 860 (1964).

The initial use of the road across the Bull lot originated by permission of the Shaws. In the winter of 1971–72, there were confrontations between Mr. Shaw and Mr. Dennison over the use of the road in which Shaw protested the use of the road and physically blocked the road. Things quieted down thereafter, and the property was essentially vacant from January, 1975, until Mr. Stallard moved onto the property in

August, 1976. After the Stallards began using the road, Shaw again immediately confronted Mr. Stallard and asked him not to use the road. Mr. Shaw again blocked the road in the winter of 1978–79 by pounding steel poles in the ground. These protests clearly show that Shaw did not acquiesce to the use of the road and broke the continuity of the use. Twenty years has not elapsed since that time, so the use of the road has not been for the requisite twenty years with the acquiescence of the owners of the Bull lot.

## III. *Decision*

For the reasons set forth in this opinion, it is adjudged, ordered, and decreed that the relief prayed for in the Bill of Complaint is denied, and the Bill of Complaint is dismissed with prejudice. The Clerk is directed to refund the plaintiff's bond.