## CIRCUIT COURT OF THE CITY OF WINCHESTER

Edward C. Lawrence et al.

v.

National Fruit Product Co., Inc.

November 4, 1997

Case No. (Chancery) 97-196

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court for trial on October 31, 1997, on the issue of the parties' respective rights to own or use Strother's Lane, a road which now bisects the property of National Fruit but which historically was the northern boundary of the property which National Fruit owned south of Strother's Lane. The parties appeared with their counsel, and evidence was heard *ore tenus* and argued by counsel. Upon consideration whereof, the Court has made the following decision determining that Strother's Lane is a private road over which the Lawrences, Smith, and the City of Winchester have a right of ingress to and egress from their respective properties and that National Fruit may not place a gate across the right of way.

### I. *Findings of Fact*

The following facts are found by the greater weight of the evidence.

## A. *The Character of the Parties' Property*

Plaintiff Lawrence and Defendant Smith own property at the western end of a road in Winchester, Virginia, called Strother's Lane. The Lawrence and Smith properties are part of the former Strother Farm, which originally consisted of several hundred acres lying to the west of the old Town of Winchester. When Winchester was originally platted in 1752, the property embraced by what came to be called the Strother Farm was not within the town. As late as 1921, the Strother Farm was not in the City of Winchester (see Plaintiff's Exhibit 21), and the eastern boundary of the Strother Farm was the city limit of the City of Winchester. Both the Smith and Lawrence properties are undeveloped and are pastoral in character despite their now being within the City Winchester and surrounded by development.

National Fruit Product Company ("NFP") has assembled a tract of land comprised of over sixty acres in the City of Winchester, which lies on the north side of Fairmont Avenue and east of the old Strother Farm. See NFP Ex. 3. National Fruit's property contains an extensive apple processing facility and attendant structures and uses.

National Fruit acquired its first parcel on Fairmont Avenue in 1915, and in 1926 it built an apple processing plant there whose operations have continued and greatly expanded since that time.

Until 1985, all of National Fruit's land lay south of the road which has come to be called Strother's Lane. NFP's deeds prior to 1985 describe its northern boundary as "Strother's Lane" (Plaintiff's Exhibit 1), "the south side of a private road" (NFP Exhibit 6), and "Strother Lane on the north" (NFP Ex. 7).

In 1985, NFP acquired the property lying north of Strother's Lane from Shenandoah Apple, which deed into NFP describes the property's southern boundary as "a concrete monument in the Northern Line of Strother's Lane; then with said line." (NFP Ex. 9.) See also NFP Ex. 16, which uses similar language.

The City of Winchester has no deed of dedication or other recorded instrument conveying any interest in Strother's Lane to the City of Winchester for use as a public road.

In 1953 the City of Winchester acquired a reservoir site on the north side of Strother's Lane (Frederick County Deed Book 230, page 48), and all of the City's activities on Strother's Lane date from that time.

## B. *Strother's Lane's status as shown by the title instruments*

Deed to National Fruit dated April 1, 1915, recorded in Winchester Deed Book 31 at page 91, which shows Strother's Lane as a boundary.

Deed to National Fruit dated March 1, 1923, recorded in Winchester Deed Book 41 at page 89, which shows Strother's Lane as a boundary.

Deed to National Fruit dated June 28, 1949, recorded in Winchester Deed Book 73 at page 203, which shows Strother's Lane as a boundary.

Deed to National Fruit dated July 31, 1985, recorded in Winchester Deed Book 194 at page 724, which shows Strother's Lane as a boundary.

The first reference in NFP's chain of title to its property on the south side of Strother's Lane to a road in the location of the present Strother's Lane is in the 1859 Deed to NFP's predecessor in title, NFP Ex. 35, which describes the property as "bounded on the north by a lane [Strother's Lane] running westward from the North Frederick Turnpike Road [now Fairmont Avenue]."

The first reference in NFP's chain of title to its property on the north side of Strother's Lane (the former Shenandoah Apple property) to a road in the location of the present Strother's Lane is in the 1853 Deed to NFP's predecessor in title, NFP Ex. 25, which describes the property as going to a "corner in the old Weaver Road [Strother's Lane] then along the road."

By 1867 the private lane at the location of Strother's Lane was clearly acknowledged by the adjoining property owners, because the February 23, 1867, Wolfe deed (NFP Ex. 34) describes the property, which comprises National Fruit parcels A, B, and D on NFP Ex. 3, as being twenty-one feet from Thatcher's line. Thatcher owned the property to the north of the lane and is in the Shenandoah Apple chain.

The 1953 Plat of the City's reservoir site, which is recorded in Frederick County Deed Book 230, at page 50, and which was prepared by the City Engineer, does not show Strother's Lane as a public road.

The Lawrences' and Smith's predecessors in title, The Clearbrook Woolen Company, Inc., and William H. Lawrence and Nancy C. Lawrence, as well as William C. Miller and others treated Strother's Lane as a roadway and identified it as such in the chain of title, reference being made to a 1916 deed showing the property to be at "the Western terminus of Strother's Lane," and to a 1942 Deed identifying a "present roadway," shown on an attached plat as Strother's Lane. Also, J. Fred Strother, a previous owner, referenced this roadway, also called the "Old Pughtown Road," in an 1889 Deed of Trust.

The express easement over Strother's Lane was also implicitly recognized by National Fruit when it conveyed a 9,768 square foot parcel to Clearbrook Woolen Company, Incorporated, in 1949, citing Strother's Lane as a boundary

and without providing any express right of way to Fairmont Avenue, other than mentioning Strother's Lane. Plaintiff's Exhibit 10.

## C. *Historical References to Strother Lane on Maps*

The 1857 Washington Blythe Map, Plaintiff's Ex. 15, shows a "Lane" in the location of Strother's Lane.

The 1894 USGS Map, Plaintiff's Ex. 18, and the 1885 Atlas of Frederick County, Plaintiff's Ex. 20, show a road along the course of Strother's Lane which does not traverse the Strother Farm but rather ends well within the eastern part of the Strother Farm at or near the present Edward Lawrence residence.

The 1939 DeGrange Map of the City of Winchester, Plaintiff's Exhibit 33, shows a road in the location of Strother's Lane, but that road is not designated as such nor is it listed in the Street Index on the map.

The 1921 Boundary Line Map of the City of Winchester shows Strother's Lane. Plaintiff's Exhibit 24.

## D. *Historical Use of Strother's Lane*

Strother's Lane was historically used as the primary access road to the property at the western end of the lane which has come to be called the Strother Farm; hence the name "Strother's Lane." By at least 1857, the owners of the farm west of Winchester had begun to use the straighter and less steep lane in the location of Strother's Lane with sufficient frequency and notoriety in the community for it to be shown on the Washington Blythe map and for the property owners, who are NFP's predecessors in interest, along what is now Fairmont Avenue to use this lane as a boundary to their property.

There was no evidence of any maintenance work by the city on any portion of Strother's Lane until after the City built a water reservoir on the hill behind the National Fruit plant in 1953. The City has never maintained Strother's Lane beyond the point where its road to its reservoir site exits from Strother's Lane.

All of the two way cross streets in the city which intersect Fairmont Avenue are paved their entire length, have street signs stating their name, and traffic on them is controlled by stop signs. Strother's Lane has none of these common attributes of public streets, nor was any evidence produced to show that the City had ever fully maintained the lane commensurate with the other public streets in the area, ever marked it with a city street sign, or ever controlled traffic on the lane in any manner.

Strother's Lane was used daily for decades by both NFP on the south and Shenandoah Apple on the north of Strother's Lane without permission of either party from the other to use the road.

There was a restaurant open to the public with a city street address on Strother's Lane, known variously as "Mac's Lunch," "Pinck's and Pats," and "Funks," which operated from the 1920's until around 1970. This restaurant was on the north side of Strother's Lane on what was then the property of Shenandoah Vinegar (Apple).

While a .12 mile portion of Strother's Lane is classified as a public street by the Virginia Department of Highways resulting in the City's receiving public funds therefor, there is no resolution or official explanation as to how that came to be.

All of the property owners on Strother's Lane in this century have acquired and conveyed parcels by deeds referring to Strother's Lane as a property boundary, including a deed from National Fruit to Clearbrook Woolen Company, Incorporated, without express rights of ingress and egress to Fairmont Avenue.

After it acquired its reservoir site, the City installed water and sewer lines and fire hydrants within Strother's Lane without objection or interference by any party and without the express consent of the adjoining landowners, including National Fruit and its predecessors.

## II. Conclusions of Law

### A. Strother's Lane is not a Public Road

In the present case, both the exact origin and date of creation of Strother's Lane are unknown. However, there are references to a private lane in the location of Strother's Lane in deeds dated as early as 1853, at which time Virginia had no codified law dealing with the creation of a public road. Apparently, common law principles governed the determination of the private or public character of a road until the creation of the state highway system in the 1930's.

The case of *Commonwealth v. Kelly*, 49 Va. (8 Gratt.) 700 (1851), is instructive both as to the law governing public roads in Virginia before the Civil War as well to the historical character of roads at that time. The *Kelly* Court noted that:

In this country the price of land is not high; nor do owners of it guard against trespasses on it with the same care [as England]; and it

is known to all who have lived in the country, that until a recent period, owners frequently permitted roads to be opened through their forests and other lands not in cultivation without the least intention of dedicating these roads to the public. Many roads so opened remain for long periods, and indeed they are not often closed until the owners have occasion to cultivate the land through which they run. Even in England there must be an intention to dedicate the road, there must be the *animus dedicandi*, of which the use is the evidence and nothing more ... . For why shall we infer that an individual makes a gift of his property to the public from an equivocal act, which equally proves an intention to grant a mere revocable license? ... the road may be made public if the public convenience requires it, by making compensation to the owner ... .

[T]he right of acceptance must be vested in some public body. And we think that by the laws of this state this right is vested in the County courts. They alone are authorized to establish public roads, and they are to see that they are kept in repair. If we are right in this opinion, the acceptance of a public road must be by record; for the County courts can speak only by record. We do not mean that there must be a formal acceptance entered on the records of the Court. Any entry showing that the Court regards the road as a highway will be sufficient, as laying it off into precincts and appointing surveyors or oversees over it and the like.

*Id.* at 701-702.

Based upon a review of the title to the land in question and the evidence, there is no record of any official proceeding to dedicate any portion of the private lane known as Strother's Lane as a public road.

As Strother's Lane enters the Lawrence property it becomes coterminous with the route of the old Wappacommo Road, the path of which is still traceable on the ground. See Plaintiff's Exhibit 25. By at least 1857, the Blythe Map (Plaintiff's Exhibit 15) indicates that the Old Wappacommo Road as it formerly traversed the Strother Farm had ceased to be a thoroughfare or a public way west from Winchester. See also Frederick County Atlas 1885, Plaintiff's Exhibit 20. It is also equally clear that by 1853 and 1857, that the private lane in the present location of Strother's Lane was sufficiently recognized by the adjoining property owners and within the local community for map makers to show it on a map (Plaintiff's Exhibit 15) and for deed scrivener's to use it as a boundary reference for property which abutted on the lane. (Plaintiff's Exhibits 25, 34, and 35.)

While "[i]t is well-established that dedication of land [for public use] may be either express or implied," *Virginia Hot Springs Co. v. Lowman*, 126 Va. 424, 101 S.E. 326 (1919), and that no deed or writing is required, only the owner's intention to dedicate, *Lynchburg Traction Co. v. Guill*, 107 Va. 86, 57 S.E. 644 (1907), there is no express or implied dedication in this case. "Mere acquiescence by the owner in the use of the land by the public does not, standing alone, establish the intention to dedicate it permanently to the public use; but such use, especially if long continued, taken in connection with other circumstances, may raise a presumption of such an intention on the part of the owner." *Minor on Real Property*, vol. 2, § 1259, citing *Buntin v. City of Danville*, 93 Va. 200, 204, 24 S.E. 830 (1896); and *Town of West Point v. Bland*, 106 Va. 792, 56 S.E. 802 (1907).

As noted previously, in this century the procedure for establishing a public road has been codified. Virginia Code § 33.1-184 sets forth the evidentiary requirements to prove the existence of a public road:

> When a way has been worked by road officials as a public road and is used by the public as such, proof of these facts shall be prima facie evidence that the same is a public road. And when a way has been regularly or periodically worked by road officials as a public road and used by the public as such continuously for a period of twenty years, proof of these facts shall be conclusive evidence that the same is a public road. In all such cases the center of the general line of passage, conforming to the ancient landmarks where such exist, shall be presumed to be the center of the way and in the absence of proof to the contrary the width shall be presumed to be thirty feet.
>
> Nothing herein contained shall be construed to convert into a public road a way of which the use by the public has been or is permissive and the work thereon by the road officials has been or is done under permission of the owner of the servient tenement.

The evidence is this case shows that no public right of passage exists over Strother's Lane, because the road has never been generally maintained or officially recognized by the City of Winchester as a public road. *See Burks Bros. of Va. v. Jones*, 232 Va. 238, 349 S.E.2d 137 (1986) (Maintenance by CCC and Virginia Dept. of Forestry was not maintenance by "road officials"). All of the evidence which was presented of maintenance by the City was on that portion of Strother's Lane lying between Fairmont Avenue and the City's water reservoir which it constructed in the early 1950's. The fire hydrants were maintained by the city to provide fire protection to the industries which

had developed along Strother's Lane. The evidence did not disclose the exact extent or why the City may have paved a small portion of Strother's Lane at and near its entrance onto Fairmont Avenue. There is no evidence of maintenance of Strother's Lane by the City of Winchester beyond the City's reservoir property to the point where Strother's Lane enters the Lawrence property.

Since the road has been in existence since the 1850's, sufficient time has passed for even the most caution and deliberate of public officials to take the appropriate action to accept or dedicate Strother's Lane as a public road, and that has never happened.

### B. *Lawrence, Smith, and the City have an express right of way over Strother's Lane*

"Every Deed conveying land shall be construed to include all ... appurtenances of every kind belonging to the lands therein embraced." Virginia Code § 55-50. The various deeds to the Lawrences, Smith, and the City grant them an easement over Strother's Lane. "An easement continues to adhere to the dominant estate to which it is appurtenant and passes with it to the grantee thereof, even if not specifically mentioned." *Corbett v. Rueben*, 223 Va. 468, 290 S.E.2d 847 (1982). *See also Cushman Va. Corp. v. Barnes*, 204 Va. 245, 129 S.E.2d 633 (1963), holding that a Deed which conveyed described realty "together with a right of way thirty feet wide running from the tract conveyed through a designated part of a described lot to the center of a designated road" conveyed a right of way over the road.

Strother's Lane has been clearly defined and used as a boundary reference for over one hundred and fifty years. It has been freely and regularly used by all the property owners abutting on it as a means of ingress and egress to their property. It has been used as one of the primary roads to get to and from the property called the Strother Farm for a like period, and the use of Strother's Lane is an appurtenant easement to the Lawrence, Smith, and City properties to which it provides access to Fairmont Avenue.

### C. *If the Lawrences and Smith do not have an express easement, they have an easement by prescription*

#### 1. *Open, Uninterrupted, Continuous, and Exclusive Use for More than Twenty Years Establishes a Prima Facia Case of Prescription*

It is well established that:

> "Where there has been an open, visible, continuous and unmolested use of a road across the land of another for at least twenty years, the use will be presumed to be under claim of right, it places upon the owner of the servient estate the burden of rebutting this presumption by showing that the use was permissive, and not under a claim of right." *Martin v. Proctor*, 227 Va. 61, 65, 313 S.E.2d 659 (1984) quoting with approval *Craig v. Kennedy*, 202 Va. 654, 657-58, 119 S.E.2d 320, 322-23 (1961) ... .
>
> "[F]ailure to show the origin of the use raises a presumption that the easement originated either adversely or by grant, the presumption only arises after proof that 'a way has been used openly, uninterruptedly, continuously and exclusively for a period of more than twenty years ... .' " *McNeil v. Kingrey*, 237 Va. 400, 404, quoting with approval *Williams v. Green*, 237 Va. 205, 208, 68 S.E. 253 (1910).

This presumption is *prima facie* only, and it may be rebutted by the owner of the servient tract. *Markham v. Hall*, 215 Va. 683, 212 S.E.2d 302 (1975).

### 2. *Owner of the Servient Tract Must Acquiesce to the Prescriptive Use*

The general rule in Virginia is set forth in *Markham v. Hall*, 215 Va. 683, 691-692, 212 S.E.2d 302 (1978):

> The law in Virginia applicable to easements by prescription is well settled. "In order to establish a private right of way over the lands of another by prescription it must appear that the use of the roadway by the claimant was adverse, under claim of right, exclusive, continuous, uninterrupted, and with knowledge *and acquiescence of the owner of the land over which it passes, and that such use has continued for a period of at least twenty years.*" *Craig v. Kennedy*, 202 Va. 654, 657, 119 S.E.2d 320, 322-23 (1961). Where a way has been used exclusively, openly, without interruption, and continuously "for a period of more than twenty years, the origin of the way not being shown, *there is a presumption of a right or grant from the long acquiescence of the party upon whose land the way is.*" *Williams v. Green*, 111 Va. 205, 207, 68 S.E. 253, 254 (1910). This presumption of a grant or adverse right is merely prima facie and may be rebutted. *Id.*; 2 Minor on Real Property § 987 (2d ed. F. Ribble 1928). *Accord, Causey v. Lanigan*, 208 Va. 587, 590, 159 S.E.2d 655, 658 (1968);

*Reid v. Garnett*, 101 Va. 47, 52, 43 S.E. 182, 184 (1903). [Emphasis added.]

In Virginia "the title by prescription is based entirely upon the presumption of a grant, lost or destroyed by lapse of time, and upon the further rather strained assumption that the owner's mere protests subsequently made, rebut the presumption of a previous grant, [and] the doctrine seems established that such protests destroy the prescriptive title of the adverse claimant." Minor on Real Property (Ribble), vol. 2, § 991. This principle was applied in *Reid v. Garnett*, 101 Va. 47, 52, 43 S.E. 182 (1903), a prescriptive easement case, in which the Supreme Court stated:

> [P]roof of adversary possession for twenty years, such as would create the presumption of a grant, was only presumptive and not conclusive, and might be rebutted by evidence showing that the adversary use and enjoyment relied on was not acquiesced in but the right was contested, and that the denial of the claimant's right by the landowner as well as action against him putting the right in issue, was proper evidence to show nonacquiescence on the part of the landowner.

*Accord* Annotation, *What Will Disprove Acquiescence by Owner to Easement by Prescription in Case of Known Use*, 5 A.L.R. 1325 (1920). "[A]ny unambiguous act of the owner of the land which evinces his intention to exclude others from the uninterrupted use of the right claimed breaks its continuity so as to prevent the acquisition of an easement therein by prescription." 25 Am. Jur. 2d, *Easements and Licenses*, § 57.

The initial use of the private lane in this case was expressly recognized by the adjoining property owners more than one hundred fifty years ago, and the lane has been used openly, exclusively, notoriously, and under claim of right more than twenty years. It was not until National Fruit acquired the Shenandoah Apple property north of Strother's Lane and the Lawrence property was conveyed to Smith in 1987 that National Fruit ever began to assert its ownership to Strother's Lane or its supposed right to place a gate across Strother's Lane.

### D. *If Lawrence, Smith, and the City do not otherwise have an easement over Strother's Lane, they have an easement by estoppel*

National Fruit sold a 9,768 square foot parcel to Clearbrook in 1949 as above described. That property was described as being bounded by Strother's

Lane, the only access to Fairmont Avenue. In *Gish v. City of Roanoke*, 119 Va. 519, 89 S.E. 970 (1916), the Supreme Court held that where at the time of a conveyance there was in use a well-defined way, though it was not platted as a street, and a subsequent conveyance definitely fixed its location as between certain lots, the right to the right of way as then located was fixed, and subsequent purchasers could not cut off such way to the detriment of an adjoining owner.

The elements of an implied easement by estoppel are a "showing of inducement, reliance, user, and injury." *Jones v. Beavers*, 221 Va. 214, 219, 269 S.E.2d 775 (1980). This is a case in which grantors have repeatedly conveyed land by deeds describing it as bounded by Strother's Lane. In such cases, an easement may be created by estoppel as noted by the Supreme Court in *Walters v. Smith*, 186 Va. 159, 172, 41 S.E.2d 617 (1947), where it quoted with approval *Minor on Real Property* (Ribble) vol. 1, § 104:

> Easements are sometimes created by estoppel; for example, if the vendor of land actually or constructively makes representations as to the existence of an easement appurtenant to the land sold to be enjoyed in land which the vendor has not sold. Thus, where a vendor describes the land sold as bounded on a street described as running through the vendor's unsold land, the vendor is, as against his vendee ... estopped to deny the existence of such a street, the conveyance practically creating a private right of way over the vendor's land along the route described in favor of the grantee.

In this case, the evidence shows clearly that both National Fruit and its predecessors in title acknowledged the presence and use of Strother's Lane as a means of ingress and egress to the property embraced by the old Strother Farm.

E. *National Fruit owns the fee simple interest in Strother's Lane*

The law in Virginia is that a conveyance of land bounded on a private way includes the soil to the center of the way. *City of Richmond v. Thompson's Heirs*, 116 Va. 178, 81 S.E. 105 (1914).

**F.** *The right to use Strother's Lane as a right of way has never been abandoned*

National Fruit argues that the use of Strother's Lane by the owners of the Lawrence land has been very infrequent. The rule concerning abandonment is clearly stated in *Lipscomb v. Commins*, 212 Va. 543, 544, 186 S.E.2d 74 (1972):

> The party asserting the abandonment of an easement or right of way must prove that fact by clear and unequivocal evidence. Abandonment is a question of intention and may be proved by a cessation of use coupled with circumstances clearly showing an intention to abandon the right. *Lindsey v. Clark*, 193 Va. 522, 525, 69 S.E.2d 342, 344 (1952).

The easement in Strother's Lane, however acquired, was acquired long before 1950 by the owners of Strother Farm, and National Fruit has not proven that the owners of the dominant estate have abandoned their right to use Strother's Lane.

The mere failure to use an easement, unaccompanied by an intention, express or implied, to abandon its enjoyment, is not sufficient evidence of abandonment. *Watts v. C. I. Johnson & Bowman Real Estate Corp.*, 105 Va. 519, 54 S.E. 317 (1906). Certainly, the parties here have expressed no intent to abandon the use of Strother's Lane.

A right of way is not extinguished by habitual use by its owner of another equally convenient way, unless there is an intentional abandonment of the former way. *Lindsey v. Clark*, 193 Va. 522, 69 S.E.2d 342 (1952). Just because the parties may have used another driveway, does not mean that they abandoned their right to use Strother's Lane.

**G.** *The Nature and extent of the parties' right to use Strother's Lane*

From the evidence, it appears that Strother's Lane is a private road, which is twenty-one feet wide. *See Waskey v. Lewis*, 224 Va. 206, 294 S.E.2d 879 (1982). The Lawrences and Smith have a right to use the road for ingress to and egress from their respective properties to Fairmont Avenue. The City has the same right and in addition the right to maintain its facilities as currently placed within the roadway.

*H. National Fruit has no right to restrict the use of Strother's Lane or place a gate across the lane*

This case was precipitated by National Fruit's placing of a gate across Strother's Lane. As 25 Am. Jur. 2d, *Easements*, § 100 states:

> In the absence of an express agreement of a right to maintain gates, it is the general rule that whether the servient owner [National Fruit] may erect or maintain gates, bars, or fences across or along the easement depends upon the intention of the parties connected with the creation of the easement, as shown by the circumstances of the case, the nature and situation of the property subject to the easement, and the manner in which the way has been used and occupied.

This statement of the general principle comports with Virginia law. In *Hartsock v. Powell*, 199 Va. 320, 324-325, 99 S.E.2d 581 (1957), the Supreme Court reviewed the law governing the right to place gates across rights of way *vis a vis* the gate statute:

> The applicable common law rule is thus stated in *Davis v. Wilkinson, supra,* 140 Va. at 681-2, 125 S.E. at 703, quoting from Jones on Easements:
>
> "The rule is general that the landowner may put gates and bars across a way over his land, which another is entitled to enjoy, unless, of course, there is something in the instrument creating the way, or in the circumstances under which it has been acquired or used, which shows that the way is to be an open one. The easement of way is for passage only. The land remains the property of the owner of the servient estate and he is entitled to use it for any purpose that does not interfere with the easement."
>
> This rule was repeated and applied in *Good v. Petticrew*, 165 Va. 526, 533, 183 S.E. 217, 219, and in *Carpenter v. Stapleton*, 169 Va. 22, 30, 192 S.E. 792, 795. *See also Mitchell v. Bowman*, 74 W. Va. 498, 82 S.E. 330.
>
> In *Good v. Petticrew, supra,* it was said that the right of the appellees there to maintain gates under the circumstances of that case, which are similar to those here, was well settled at common law and also under the statute ... . As amended it is now § 33-119 [now it is § 33.1-202 and the pertinent language is the same] of the 1950 Code, which provides:

"Any person owning land over which another or others have a private road or right of way may, except when it is otherwise provided by contract, erect and maintain gates *across such roads or right of way at all points at which fences extend to such roads on each side thereof ... .*" [Emphasis added.]

In this case there are no fences which "extend to such road on each side thereof" nor any evidence that such fences ever existed, so the gate statute, Virginia Code § 33.1-202, does not apply to this case. Moreover, in this case, the evidence is overwhelming that there has never been a gate on Strother's Lane for the more than one hundred and fifty years that it has been in existence and used, but rather it has always been open and ungated; therefore, National Fruit may not place a gate across the right of way without the express permission of the Lawrences, Smith, and the City.