BURKS BROTHERS OF VIRGINIA, INC., ET AL.

V.

JAMES B. JONES, ET AL.

Record No. 831130

October 10, 1986

Present: All the Justices

*Frank D. Hargrove, Jr. (Robert T. Wandrei; Radford & Wandrei*, on brief), for appellants.
*Bolling Lambeth for appellees James B. Jones and James E. Blackburn.*
*William W. Berry, IV for appellees Samuel T. R. Revell, Jr. and Ruth H. Revell.*
No briefs or arguments for remainder of appellees.

RUSSELL, J., delivered the opinion of the Court.

This appeal involves the determination of public and private rights in a mountain trail and in a portion of an abandoned public road.

There is no significant factual dispute. The controversy concerns access to lands near the Peaks of Otter in Bedford County, on a long mountain which extends from Antioch Church on the southwest to Bedford Lake on the northeast. The mountain is paralleled by two public roads: Route 122 on its southeast side and Route 640 on its northwest side. The two roads are connected by Route 639, which crosses the northeastern end of the mountain near Bedford Lake. That connecting road intersects Route 122 at Colton's Mill, south of the lake, and intersects Route 640 at Curtis, north of the lake.

In addition to these public roads, an old trail (hereinafter the CCC trail) follows the ridge of the mountain for a distance of about eight miles, from Antioch Church, where the trail intersects Route 640, northeastwardly to the Bedford Lake area, where it formerly intersected the connecting public road which crossed the mountain from Colton's Mill to Curtis. The evidence showed that this trail had been used for ingress and egress for many years by people who lived on the mountain. For many of them, no other access to their land was available. One witness, who had lived on the mountain from "[s]omewhere between '02 and '05" until 1925, testified that the trail had been there for "hundreds of years, I suppose" and that its present route was the same as its original course except at one point where the Civilian Conservation Corps (CCC) had re-routed it slightly. The evidence showed

that the CCC had maintained the old road as a fire trail in the 1930's and that more recently, up until about 1969, it had been maintained as a fire trail by the Virginia Forest Service. Owners of property on the mountain and their guests continued to use it after 1969.

The appellants[1] (collectively "Burks") own a tract of land at the eastern terminus of the CCC trail, upon which they operate a park and lake concession open to the public. The public road from Colton's Mill to Curtis at one time ran through the Burks property. The CCC trail's eastern terminus is the point where it intersects that connecting road on the Burks property. At some time in the past, the public road from Colton's Mill to Curtis was rerouted to the north, and became the present Route 639. That change of route left an unused loop of the old public connecting road within the boundaries of the Burks property.

The Burks complained that the public was using the loop to gain access to the park without payment, and, in 1968, petitioned the Board of Supervisors of Bedford County for abandonment of the loop pursuant to former Code § 33-76.16. The Board dismissed the petition, and the Burks appealed to the Circuit Court of Bedford County pursuant to former Code § 33-76.19. The only parties to the proceeding were the Burks and the Board. The court[2] viewed the property, heard the evidence *ore tenus*, and issued a written opinion, followed by a final decree entered May 19, 1969. No appeal was taken from the decree.

The effect of the 1969 abandonment proceeding was limited to those parts of the former public road, and those parts of the CCC trail, which lay within the boundaries of the Burks property. The decree held that the CCC trail had never been a public road, and abandoned the loop of the former public road from Colton's Mill to Curtis which lay within the Burks property. The court made the abandonment subject to the following express conditions: (1) access to the CCC trail would be permitted across the Burks property "for the normal and non-commercial use and benefit of property owners and permanent and temporary residents [of the mountain], including guests of such owners, upon proper identification,

---

[1] Burks Brothers of Virginia, Inc., and James A. Burks and N. Marshall Burks, trading as Burks Brothers of Virginia, a partnership, successors in title and interest to Bedford County Park, Inc.

[2] The 1969 case was decided by Judge William W. Sweeney. The present case was decided by Judge Robert C. Goad.

whose property adjoins the [CCC trail] or who must use the portion of the road herein abandoned for access to a public road, and to the Virginia Division of Forestry and such permissive use by guests of landowners may be denied and revoked by [Burks] if abused"; (2) the hauling of lumber, logs and pulpwood by tracks over the abandoned public road would be prohibited in the absence of Burks' consent; (3) Burks may, at its option, either grant or deny permission to hunting clubs, horseback riding clubs or other private individuals to use the abandoned public road for lawful purposes; and (4) "the general public shall not be restricted in using any portion of the [CCC trail] for lawful purposes."

In 1966, Samuel T.R. Revell, Jr., and Ruth H. Revell purchased a tract of 409 acres near the mountain ridge. The tract did not abut the CCC trail, but had an easement over an old logging road which crossed an intervening parcel and gave access to the CCC trail. The Revells understood that they had a right of ingress and egress over the logging road to the CCC trail and thence either southwest to Route 640 at Antioch Church or northeast, through the Burks property to Route 639. Later, the Revells acquired the "Annie Perrow Austin" tract which abutted the 409-acre tract on the south. The Austin tract had access to Route 122 and the Revells constructed a private road from Route 122 through the Austin tract up the mountain to the 409-acre tract. They used the new road for access except in wet weather, when they occasionally entered through the Burks property on the northeast.

In 1978, the Revells conveyed to James B. Jones and James E. Blackburn 50 acres carved out of the northeast corner of the 409-acre tract. The deed also granted to Jones and Blackburn:

> an easement of ingress and egress and right-of-way from the tract or parcel hereby conveyed over and along the existing road through the remainder of the Samuel T.R. Revell land to the CCC trail and extending over the Walter P. Niday and Russell C. Turpin lands over the presently existing road as heretofore established and limited, but such right-of-way shall be used along with the said Samuel T.R. Revell, Jr. and Ruth H. Revell, their heirs and assigns.

The Revells explained to Jones and Blackburn at the time of the sale that the only access to the 50 acre parcel would be by the

CCC trail and the logging road, and not over the new road which the Revells had built connecting the remainder of the 409-acre tract to Route 122 to the south.

Soon after their purchase, Jones and Blackburn found the CCC trail blocked at both ends. An owner whose property was crossed by the trail near Antioch Church had barred it by a locked gate and the Burks had obstructed the trail on their property by an "enormous boulder." The Revells refused to permit access over their new road from Route 122.

Jones and Blackburn brought this suit in 1980 as a motion for declaratory judgment against the Revells, contending that since the Revells could not furnish them access over the CCC trail, an easement by necessity existed over the Revells' new road to Route 122 on the south. Later, Jones and Blackburn, by leave of court, amended their pleadings to add as parties all landowners through whose property the CCC trail passes in order that all rights therein might be determined.

The suit was properly matured and referred to a commissioner in chancery, who took evidence and reported to the court, in substance, that:

1. All necessary parties are before the court.

2. The Burks, as parties to the 1969 case, are bound by that decision and must therefore honor any private rights-of-way or easements that mountain landowners may have across their property at the eastern end of the CCC trail.

3. The Board of Supervisors of Bedford County, as a representative of the general public, was a party to the 1969 case, and the public is therefore bound by the decision in that case that the CCC trail is not a public road.

4., 5. & 6. Jones and Blackburn have an express grant of easement over the logging road to the CCC trail and thence northeastward to the boundary of the Burks property, but not over any other portions of the CCC trail.

7. The CCC trail has been in continuous use by mountain landowners for over 70 years, and all owners of lands abutting it or crossed by it have prescriptive rights to use it. Further, the Revells, as owners of the 409 acre tract, and through them Jones and Blackburn, as owners of 50

acres carved out of the 409-acre tract, have easements by prescription over the logging road to the CCC trail and over the CCC trail northeastward through the lands of all intervening owners, including the Burks, out to Route 639. These prescriptive rights antedate, and are unaffected by, the express grant of easement mentioned above.

8. Because Jones and Blackburn have access via the CCC trail, they do not have an easement by necessity over the Revells' new road to Route 122 on the south.

9 & 10. The prescriptive easements of mountain landowners over the CCC trail extend only from their respective properties to the nearest terminus of the trail at a public road, not in both directions on the trail.

The Burks filed exceptions to the commissioner's report. The court overruled the exceptions, but made additional findings in a written opinion which was incorporated in final decree entered April 12, 1983. The court determined that:

1. All owners of property on the mountain which adjoins the CCC trail have a prescriptive right-of-way over the trail for access to their respective lands. Further, all owners having a lawful right-of-way to reach the trail, including the Revells, Jones and Blackburn, have a right-of-way by prescription over the CCC trail to reach their respective lands. The owners of all such rights-of-way are entitled to open and unrestricted use of the trail, "without any gates or other hinderances."

2. Judge Sweeney's 1969 opinion, insofar as it affected the Burks property, was expressly incorporated, and the court treated the abandoned loop of connecting road on the Burks property as a necessary extension of the CCC trail through the Burks property for the purposes of the present case.

3. The CCC trail had experienced "long, continuous use . . . by the public back to at least the early 1900's, that it was improved by the CCC, a government agency, in the 1930's, and thereafter maintained for many years by the Forest Service, a government agency, creating an implied

dedication and acceptance of the trail for public use, and in addition creating a prescriptive right in the public to use the Trail for lawful purposes . . ." and is now "open to use by the public."

4. & 5. Jones and Blackburn do not have an easement by necessity over the Revells' lands to the south.

The final decree expressed the court's rulings in slightly different language, but to the same general effect. The court found, departing from the commissioner's report, that the prescriptive rights of mountain landowners in the CCC trail applied through the entire length of the trail and not merely to the nearest terminus, and that the abandoned loop of former public road on the Burks property was an extension of the CCC trail for the purposes of the decree. The decree provided: "[t]hat the general public shall not be restricted in using any portion of the trail for lawful purposes; and the Virginia Forest Service is authorized to grade and maintain the trail for Forest Service purposes."

We granted an appeal to the Burks, who assign error to the trial court's rulings that the owners of property adjacent to the CCC trail, or with a lawful right-of-way to reach the trail, have a right by prescription to use the trail and the abandoned loop of former public road through the Burks property. The Burks also assign error to the trial court's ruling that the general public has acquired rights to use any part of the CCC trail or the abandoned public road by dedication or by prescription.

■ We agree with the trial court's ruling concerning private rights in the CCC trail. The evidence fully supports a finding that all property owners having access to the trail used its entire length for ingress and egress to their lands from the public roads over a period of time far in excess of twenty years. There is no evidence that this use began with the permission of the owners of the lands crossed by the trail, or that such use was ever permissive. In these circumstances, the use will be presumed to be adverse. In *Martin v. Proctor*, 227 Va. 61, 64-65, 313 S.E.2d 659, 661-62 (1984), we said:

In order to establish a private right of way over the lands of another by prescription it must appear that the use of the roadway by the claimant was adverse, under claim of right, exclusive, continuous, uninterrupted, and with knowledge and

acquiescence of the owner of the land over which it passes, and that such use has continued for a period of at least twenty years. [Citations omitted].

We have said many times that "Where there has been an open, visible, continuous and unmolested use of a road across the land of another for at least twenty years, the use will be presumed to be under claim of right, and places upon the owner of the servient estate the burden of rebutting this presumption by showing that the use was permissive, and not under a claim of right. [Citations omitted].

(quoting *Craig* v. *Kennedy*, 202 Va. 654, 657-58, 119 S.E.2d 320, 322-23 (1961)).

■ If the use of the CCC trail by the mountain landowners had been in common with such use by the general public, the element of exclusiveness, requisite for a prescriptive right, would be negated. In such a case, the right of each user of the way is dependent upon the enjoyment of similar rights by others, and no private prescriptive rights will arise. *Stanley* v. *Mullins*, 187 Va. 193, 199-200, 45 S.E.2d 881, 885 (1948) (no private prescriptive rights where road used in common with neighbors and general public en route to mills, stores, and schools). Here, by contrast, there is no evidence of any use by the general public. Each landowner asserted his own right, independent of all others, to use the trail, and no rights were dependent upon the common enjoyment of similar rights by others. The distinction is that prescriptive rights will arise where each user independently asserts his right to enjoy the right-of-way for himself, because such use is exclusive even though others assert similar rights for themselves, but rights asserted by users in common are dependent, not exclusive. *Totten* v. *Stuart*, 143 Va. 201, 203-204, 129 S.E. 217, 218 (1925). *See also Rhoton* v. *Rollins*, 186 Va. 352, 363, 42 S.E.2d 323, 328-329 (1947); *Kent v. Dobyns*, 112 Va. 586, 587-88, 72 S.E. 139, 139 (1911).

The use [is] "exclusive" when it is proprietary, not a use by the public generally, and is exercised under some claim which is independent of and does not depend for enjoyment upon similar rights by others. It is not necessary, however, that the claimant be the only one to enjoy the right of way, as other persons may acquire a prescriptive right to use it.

When a way has been so used for a period of more than twenty years, the origin of the way not being shown, the *bona fides* of the claim of right is established and a presumption of a right to the use arises from the long acquiescence of the owner of the servient estate, and the burden is on him to rebut that presumption by showing permission or license from him or those under whom he claims.

*Totten*, 143 Va. at 203-204, 129 S.E. at 218 (citations omitted).

■ As noted above, the commissioner reported that the prescriptive rights of mountain landowners in the CCC trail ran in only one direction on the trail, *i.e.*, from each dominant tenement's point of access on the trail to the nearest public road. Although not made the subject of a specific exception, the trial court's decree departed from the commissioner's report in this respect, establishing the prescriptive rights of the mountain landowners throughout the entire length of the trail. The trial court's conclusion is fully supported by the evidence and the partial rejection of the commissioner's report upon which it is based was within the court's power pursuant to Code § 8.01-610. Accordingly, we will affirm the decree with respect to private rights by prescription in the CCC trail.

The Burks assign error to the trial court's holding that the private prescriptive rights of the mountain landowners extended past the historic northeastern terminus of the CCC trail on their property, and continued on the loop of abandoned public road further across their lands to Route 639. They argue that private prescriptive rights can never arise in a public road, and that none can have arisen in the loop after its abandonment because a period of twenty years has not yet elapsed since that event.

■ Whatever force these arguments may have, the Burks are estopped to assert them. They were parties to the 1969 decree entered by Judge Sweeney, from which no appeal was taken. That decree, as noted above, abandoned the loop of formerly public road within the Burks property upon several express conditions, which include access by the mountain landowners, their guests, and temporary and permanent residents, through the Burks property to the CCC trail. The Burks are collaterally estopped from the relitigation of that issue. *See Bates* v. *Devers*, 214 Va. 667, 671, 202 S.E.2d 917, 921 (1974). No other party, of course, assigns error to the court's ruling in that respect. The 1969 decree

was rendered by a court having jurisdiction over the subject matter, and due to the lapse of time it is not reversible for error. It is, therefore, immune from collateral attack and is conclusive upon the parties to the 1969 proceeding. *American Ry. Express Co.* v. *Royster Guano Co.*, 141 Va. 602, 608-609, 126 S.E. 678, 680 (1925).

We will affirm the decree appealed from insofar as it includes the loop of former public road on the Burks property as a part of the CCC trail over which private prescriptive rights extend to Route 639.

■ We last turn to the trial court's rulings that the general public has acquired a right to use the CCC trail by implied dedication and acceptance and by prescription. We do not find evidence in the record to support these holdings. As stated above, the use of the trail by the mountain landowners is presumed to be adverse to the owners of the underlying fee, and the record is devoid of evidence of any conduct on the part of the owners of lands crossed by the trail from which an offer to dedicate may be inferred. A common-law dedication requires either a written or express offer to dedicate or unequivocal evidence of an intention to dedicate. Until it is accepted by the public, it is a mere offer to dedicate, no matter how finally it is expressed. *Brown* v. *Tazewell County Auth.*, 226 Va. 125, 129, 306 S.E.2d 889, 891 (1983).

■ Code § 33.1-184 provides, in pertinent part: "When a way has been worked by road officials as a public road and is used by the public as such, proof of these facts shall be prima facie evidence that the same is a public road." There was evidence that both the Civilian Conservation Corps and the Virginia Forest Service had improved and maintained the trail in the past, but these public agencies were not "road officials" within the meaning of the statute, and their work was not done to open the trail for public travel. Rather, their purpose, according to the evidence, was to improve it for their own use as a fire trail.

■ Although acceptance may be implied in urban areas, a formal acceptance or express assertion of dominion over the road by public authority is required before dedication of a rural road is complete. *Bradford* v. *Nature Conservancy*, 224 Va. 181, 198-99, 294 S.E.2d 866, 875 (1982); *Lynchburg Traction Co.* v. *Guill*, 107 Va. 86, 99, 57 S.E. 644, 646 (1907). There is no evidence in the record of formal acceptance by public authority. Because both

requisite elements of a valid dedication are lacking, we hold that there are no public rights in the CCC trail by dedication.[3]

■ Because, as noted above, there was no evidence of long-continued use of the CCC trail by the general public, as distinguished from use by landowners, residents, and their guests, we do not agree with the trial court's conclusion that the general public has acquired a prescriptive right to use the CCC trail and because we conclude that the public has acquired no rights by dedication, we will reverse that part of the decree which provides for rights in the general public to use the CCC trail, in whole or in part.

We will, accordingly, modify the decree appealed from by deleting, from its third numbered paragraph, the words: "That the general public shall not be restricted in using any portion of the Trail for lawful purposes."[4] The decree, as thus modified, will be affirmed.

*Decree reversed in part,*
*modified and, as modified, affirmed.*

[3] The 1969 decree, to which the public, as represented by the Bedford County Board of Supervisors, was a party, provided: "the general public shall not be restricted in using any portion of the Fire Trail [the CCC trail] for lawful purposes." That provision must be interpreted to extend only to the small portion of the CCC trail which lay within the Burks property, that being the only area under consideration by the court in 1969. Because only the Board and Burks were before the court, the 1969 decree could have no effect upon the rights of landowners other than Burks, strangers to the 1969 case, whose lands were crossed by the trail. Further, the 1969 decree drew a distinction between the CCC trail and the abandoned loop of public road on the Burks property; it retained no public rights in the latter.

[4] The remaining clause of the modified paragraph, concerning access by the Virginia Forest Service, is quoted earlier in this opinion. No error was assigned to it and it will not be disturbed on appeal.