## CIRCUIT COURT OF CAMPBELL COUNTY

Blanks et ux.

v.

Pittard et al.

March 17, 1987

By JUDGE J. SAMUEL JOHNSTON, JR.

I have received and reviewed the submitted memoranda of law and completed my research in the above-styled case. Further, I have read the transcript of the hearing before me on December 1, 1986. The record should also reflect that I viewed the property that is the subject of this action at the request of, and in the presence of, the parties. This letter contains my findings of fact and conclusions of law and is published as my opinion in the matter.

There are several requirements for the establishment of a prescriptive easement. These requirements or elements of prescriptive easements must be established by the claimant on evidence that is clear and convincing. Before a prescriptive use of property ripens into a prescriptive right to use property, the use must be shown to have been adverse to the owner of the servient estate, under a claim of right, exclusive, continuous, uninterrupted, and with the knowledge and acquiescence of the owner of the servient estate and be in continuous use for at least twenty years. *Craig v. Kennedy*, 202 Va. 654, 119 S.E.2d 320 (1961).

I will set forth and discuss these elements seriatim. The parties will be referred to as Blanks (the claimant of the prescriptive right) and Pittard, recognizing that Mr. Kidd recently purchased the property from Mr. Pittard, subject to this suit, and that Mr. Kidd is the true party in interest.

I. *Was Blanks's use of the Pittard property adverse?*

This question must be answered affirmatively. Mr. Pittard testified that no one had permission to use his property in the manner that Blanks and the customers and employees of Blanks did. (Tr. p. 159, p. 160, and p. 171). The Supreme Court of Virginia in *Burks Brothers, Inc. v. Jones*, 232 Va. 238, 349 S.E.2d 134 (1986), stated that where there is no evidence that the use began as permissive or ever became permissible, the use will be presumed to be adverse. Blanks's use of Pittard's property most certainly was contrary to, adverse to, or hostile to the rights of Pittard's use of his own property.

II. *Was Blanks's use of Pittard's property without permission?*

This inquiry has already been answered in the affirmative. While Pittard testified that he allowed Blanks to use the property after a confrontation in 1983, he said he did so to be "good neighbors" (Tr. p. 172) even though no one had permission to use the property (Tr. p. 171). Pittard cannot be heard to say that the use was permissive after repeated assertions that no one had permission to use the property as Blanks and the employees and customers of Blanks did.

III. *Did Pittard have knowledge of and acquiesce in Blanks's use of his land?*

There can be no serious question that Pittard knew of the prescriptive use of his property for ingress and egress to Blanks's property. Mr. Pittard himself used the subject property in the same manner as Blanks and Blanks's customers and employees. (Tr. p. 159).

The question of acquiescence is more troublesome. Legal consent or permission implies a positive or affirmative action or attitude on behalf of the servient land owner. Acquiescence connotes consent by acceptance or indifference. In *Davis v. Wilkinson*, 140 Va. 672, 125 S.E. 700 (1924), the Supreme Court stated "failure to object to the use of the way is very often stated by witnesses as consent to its use, yet such consent is mere acquiescence, and acquiescence is one of the elements upon which the ripening of the use into a legal right rests." *Davis, supra* at 679.

There appear to be two occurrences or incidents concerning the issue of acquiescence. Mr. Pittard testified that he barricaded his property in 1983 to prevent Blanks's use of it because of some damage to the Tastee Freeze building by a large truck. Blanks denies that this occurred, averring that Pittard never completely blocked the property so as to prevent or thwart his use of it. I find as a matter of fact that Mr. Pittard did block or barricade his property in 1983 but not in a way to deny or thwart Blanks's use of his property for ingress and egress. Thus I find that there was never express nonacquiescence by Mr. Pittard until 1986, which led to this lawsuit.

The more difficult question to answer concerns the lessee's nonacquiescence to Blanks's prescriptive use of the property. Mrs. Crews, who leased the property from Pittard from 1971 to 1982, did block Mr. Blanks's use of the property sometime between 1976 and 1978. The length of time of the interruption of use is in dispute. This action by Mrs. Crews was clearly nonacquiescence in the prescriptive use by Blanks. Blanks protested the blockade, and it was removed. Mrs. Crews testified that the blockade lasted some three months while Mr Blanks said it lasted only a few hours. The more believable evidence is that the blockage lasted only a few hours and was removed as per the testimony of Mr. Blanks (Tr. p. 139 and p. 140). Thus, I find that there was nonacquiescence by the lessee, Mrs. Crews, to Blanks's use of the property lasting some four hours during 1976 or 1977 or 1978.

My dilemma is trying to decide whether or not the nonacquiescence of Mrs. Crews for four hours should vitiate the right claimed by Mr. Blanks and whether Mr. Pittard can assert the nonacquiescence of Mrs. Crews as his own.

It is unrefuted that he told her that she could block it off or do anything she wished as she had complete control of the property (Tr. p. 168). I can find no case directly on point, and none has been cited to me.

There was no testimony by Mr. Pittard or Mrs. Crews that Mr. Pittard affirmatively shared the nonacquiescence of Mrs. Crews but merely believed she had the right to blockade the property. It is my opinion that Mr. Pittard cannot rely upon a tenant's nonacquiescence to establish his own under the facts of this case. The testimony indicates to me that Mr. Pittard believed Mrs. Crews had the same rights that he had, and she could assert them as she chose. I cannot infer that Mrs. Crews was asserting a right of Mr. Pittard, the owner of the property, that inured to his benefit. Further, there is no evidence that Mr. Pittard knew of any blockade of the property by Mrs. Crews or in any way ratified her action or adopted it as his own. Thus, I find that there was continuous acquiescence by Mr. Pittard until 1986.

IV. *Was Blanks's use of Pittard's property exclusive?*

It is clear that Blanks's use of the Pittard property must not have been shared with the general public. This does not mean that others may not ever use the "easement." The "easement" may be shared with others, but it must be under a claim of right, independent of the claim of others. Mr. Blanks's testimony was that he his customers, his suppliers, and his employees were the users of the Pittard property for ingress and egress to his property.

The only evidence that the easement might be shared or enjoyed with the general public was an answer by Mr. Pittard (Tr. p. 159), with the answer being equivocal at best. Mr. Pittard recalled that he might have used the same route for ingress and egress. All of the evidence though substantiates that the use of Mr. Pittard's property was for the people working for, or doing business with, Blanks and his predecessors in title. Thus, I find that the use of the "easement" was exclusive and not enjoyed by the public in general.

V. *Was the use continuous and uninterrupted?*

This inquiry is necessarily twofold as Blanks's use of the "easement" clearly falls short of the twenty-year requirement. He seeks to tack on with others who utilized the Pittard property before him in the same manner. As I have set forth earlier in this letter, there was an interruption of the enjoyment of this "easement" for some four hours in the mid-70's and accomplished by the lessee of the property and not the owner. The believable evidence establishes that customers and employees of the business establishment located on the Blanks's property, including those of Blanks, have continuously and without interruption utilized the subject "easement" for more than twenty years. This use was continuous and not continual.

It was first utilized by the owners of the claimant property in 1955 and continuously by the subsequent owners of that property. I fail to see how Blanks cannot claim privity with the previous owners and users of the property and thus, he should be allowed to "tack on" their usage to that of his own. The use by Blanks's predecessors in title was identical to his, as admitted by Mr. Pittard (Tr. p. 171).

In conclusion, I find that Blanks has by clear and convincing evidence established that he and his predecessors in title have, since 1955, used and enjoyed the use of an eighteen-foot strip of Mr. Pittard's property for ingress and egress to the claimant's property.

Further, I find that the use by Blanks (and his predecessors) has been open and hostile to the rights of Mr. Pittard. The use by Blanks (and his predecessors) was without permission, yet with the knowledge and acquiescence of Mr. Pittard. The use by Blanks (and his predecessors) has been exclusive and without interruption for a period of more than twenty years. Blanks claimed this easement by right, and it matters not that there might have been other ways of access to his property.