## CIRCUIT COURT OF NELSON COUNTY

Gorgie Morris et al.

v.

Ann M. Whitley
and Elizabeth D. Whitley

October 15, 1999

Case No. CH98-67

BY JUDGE JAMES W. UPDIKE, JR.

In the captioned matter, it is conceded by stipulation that all plaintiffs are members of a family descended by blood or marriage from Van Buren and Mary Ellen Mays, deceased, husband and wife, who were the first persons to be buried in a family cemetery known as Claypool Cemetery. The cemetery is located on property owned by the defendants.

Though there is apparently no reference to this cemetery in the chain of title to defendants' property, no issue was raised in the pleadings or at trial concerning the existence of the cemetery. Rather, both the plaintiffs and the defendants seek declaratory and injunctive relief as to the size of the cemetery and plaintiffs' access to the cemetery. Issues were also raised concerning the scope of the allowable use of the cemetery and whether plaintiffs have any rights to further interments in the cemetery.

The case was tried before the Circuit Court of Nelson County on September 27, 1999, and after hearing the evidence and arguments of counsel, I deferred my decision in this case so that I could view the property in question.

I will first address the issue of the size of the cemetery. Within the area that is currently fenced by the defendants, numerous graves are clearly marked by headstones, though many of these headstones are merely stones, displaying no names or other identifying information. As previously stated, the existence

of a cemetery within the fenced area is not challenged, and indeed, Defendants' Exhibit 5 and Defendants' Exhibit 6 indicate that there are at least 43 graves within the fenced area. The disputed issue is whether there are additional graves outside the fenced area, specifically, in the area between the east fence and the current driveway of the defendants. This area is shown in the drawing introduced as Defendants' Exhibit 4 and in the photographs introduced as Defendants' Exhibits 7 and 9 and in the joint exhibit.

Tommy Green, the owner of a burial vault business with 25 years experience, testified that by examining the area in question and using a five-foot probe, he found at least ten additional graves in the area between the east fence and the driveway. According to Mr. Green, the grave located the longest distance from the fenced cemetery is 25 feet from the east fence of the cemetery.

Gordon Ferguson testified that he lived on the property in question from 1936 to 1951, and during that period, the cemetery was considerably larger than the area presently fenced by defendants.

Amber Bennett, an archeologist, also viewed the area in question, and she testified on behalf of the defendants that in her opinion there are no additional graves in the area in question.

Concerning rights acquired by a purchaser of a cemetery lot in a private, incorporated cemetery, the Supreme Court of Virginia has stated:

> The purchaser of a lot from such an association holds it by a peculiar title. He acquires no absolute interest in or dominion over such lot, but merely a qualified and usufructuary right for the purposes to which the lots are devoted and for which they are set apart by the company. Their holding is in the nature of an easement, with the exclusive right to bury in the lots, subject to the general proprietorship and control of the association, in whom the legal title is lodged.

*Roanoke Cemetery Co. v. Godwin*, 101 Va. 605, 610, 44 S.E. 769 (1903).
In this same regard, the Supreme Court of Virginia has further stated:

> The courts are much divided as to the character of the estate one may have in a burial lot in a cemetery. It is certain that it is not a fee. The weight of authority is, and we think the better view, that it is a mere privilege or license to make interments in the lot exclusively of others as long as the burying ground or cemetery remains as such.

*Grinnan v. Fredericksburg Lodge*, 118 Va. 588, 593, 88 S.E. 79 (1916).

Concerning the acquisition of rights in a cemetery lot by adverse possession, the following has been stated:

> While the right which one acquires in a cemetery lot is rather in the nature of a perpetual easement to be controlled by the exercise of the state's police power, it is such a valuable right as a court of equity will protect; and the same character of adverse possession that will confer title to real estate will suffice to confer the right. Hence, where a parcel of land has been set apart by the owner as a place for the burial of the dead, those who, with the consent and acquiescence of the owner, use the tract for the purpose for which it has been dedicated, selecting and appropriating plats or squares for the burial of their dead therein free of charge, may acquire a right to the plots or squares so appropriated by adverse possession.
>
> It is not necessary in order to acquire a right in a burial lot by adverse possession that the lot be fenced. If the limits of such a claim are clearly defined by improvements upon the lot and by a slight barrier or ridge extending all the way around the lot and are so maintained for the period of ten years clearly indicating the extent and nature of the claim, it will be sufficient to confer the right by adverse possession.

3B Michie's Jurisprudence, *Cemeteries*, § 7, citing *Sherrard v. Henry*, 88 W. Va. 315, 106 S.E. 705 (1921).

I therefore rule that the plaintiffs, as members of the family descended from Van Buren and Mary Ellen Mays, have acquired rights by adverse possession in the cemetery located on the property owned by the defendants.

As to the size of the cemetery, it is my opinion that this issue is controlled by a factual determination of whether there are additional graves in the area in question, that being the area between the east fence and the current driveway of the defendants. In this regard, I found the testimony of Mr. Green to be considerably more persuasive than the testimony of Ms. Bennett. Ms. Bennett conducted no examinations beneath the surface of this area, and though she stated that such examinations below the surface are not necessary or required by certain stated guidelines, at least a portion of the surface area in question has been disturbed by the recent relocation of the driveway. The plaintiffs also offered testimony that gravesite indentations were filled with dirt over the years so that the grass in the cemetery could be mowed more easily. Furthermore, when I consider all of the evidence presented, including

the testimony of Mr. Green, Mr. Ferguson, whom I considered to be impartial, and various plaintiffs who testified, and when I further consider my view of the property, my comparison of Plaintiffs' Exhibit B (an old photograph of the cemetery) with the other exhibits and testimony introduced, I find by clear and convincing evidence that there are additional graves in the area in question. I therefore rule that the cemetery includes the area extending in an easterly direction from the existing east fence of the cemetery, toward defendants' driveway, for a distance of 25 feet. The width of this area remains 48 feet as shown by Defendants' Exhibit 6.

I further rule that the rights acquired by the plaintiffs by adverse possession in the entire cemetery include the right to inter in the future deceased members of this family descended by blood or marriage from Van Buren and Mary Ellen Mays. However, though I have authorized future interments of deceased members of this family in this cemetery, I emphasize that § 18.2-126 of the Code of Virginia provides that the unlawful disinterment or displacement of a dead body is a Class 4 felony. I find it inconceivable that any of the plaintiffs, during any future interment, would wish to desecrate existing graves of deceased members of their family. Nevertheless, I believe further interments to be a matter of particular concern because of the limited area remaining in the cemetery where there are no existing graves and because the exact number of existing graves in the disputed area has not been established. Consequently, as a matter of equity, I enjoin the plaintiffs from any further interments in this cemetery unless such can be accomplished without the disinterment or displacement of bodies previously buried in this cemetery, and I direct the trustees of the cemetery, as fiduciaries appointed by order of the Circuit Court of Nelson County, to effectuate this order.

The next issue to be addressed is the issue of access to the cemetery. Because the cemetery borders a state highway, no right of access has accrued by implication or necessity, and no such right is alleged. Rather, the plaintiffs allege that they have an easement by prescription across the driveway and field owned by the defendants for purposes of entering and exiting the cemetery.

Concerning the acquisition of such a right by prescription, the Supreme Court of Virginia has stated:

> In order to establish a private right-of-way over the lands of another by prescription, it must appear that use of the roadway by the claimant was adverse, under claim of right, exclusive, continuous, uninterrupted, and with the knowledge and acquiescence of the owner

over the land over which it passes, and that such use has continued for a period of at least twenty years. [Citations omitted.]

We have said many times that "where there has been an open, visible, continuous, and unmolested use of a road across the land of another for at least twenty years, the use will be presumed to be under claim of right, and places upon the owner of the servient estate the burden of rebutting this presumption by showing that the use was permissive, and not under a claim of right." [Citations omitted.]

*Burks Brothers of Va. v. Jones*, 232 Va. 238, 245-46, 349 S.E.2d 134 (1986), quoting *Martin v. Proctor*, 227 Va. 61, 64-65, 313 S.E.2d 659, 661-62 (1984), and *Craig v. Kennedy*, 202 Va. 654, 657-58, 119 S.E.2d 320, 322-23 (1961).

Upon consideration of the evidence presented, I do not find that the use by the plaintiffs of the alleged right-of-way was adverse. Mr. Ferguson testified that when people attended funerals at this cemetery during the period he lived on the property, they requested permission to park in the driveway. Secondly, I do not find that the use of the alleged right-of-way was continuous. Various plaintiffs testified as to having attended funerals at this cemetery, but it was not established by clear and convincing evidence how often these funerals occurred. Finally, I do not find that the use of the alleged easement by the plaintiffs was proven to be exclusive. In this regard, the Supreme Court of Virginia has stated:

The distinction is that prescriptive rights will arise where each user independently asserts his right to enjoy the right-of-way for himself, because such use is exclusive even though others assert similar rights for themselves, but rights asserted by users in common are dependent, not exclusive.

*Burks Brothers of Va. v. Jones*, 232 Va. 238, 246, 349 S.E.2d 134 (1986). In this same decision, the Supreme Court of Virginia further stated:

The use [is] "exclusive" when it is proprietary, not a use by the public generally, and is exercised under some claim which is independent of and does not depend for enjoyment upon similar rights by others. It is not necessary, however, that the claimant be the only one to enjoy the right of way, as other persons may acquire a prescriptive right to use it. When a way has been so used for a period of more than twenty years, the origin of the way not being shown, the *bona fides* of the claim of right is established and a presumption of right to the use

arises from the long acquiescence of the owner of the servient estate, and the burden is on him to rebut that presumption by showing permission or license from him or those under whom he claims.

*Burks Brothers of Va. v. Jones*, 232 Va. 238, 246-47, 349 S.E.2d 134 (1986).

Having found that any use by plaintiffs of the alleged right-of-way was not sufficiently proven to be adverse, continuous, and exclusive for a period of at least twenty years, I rule that the plaintiffs have acquired no prescriptive rights of access to Claypool Cemetery across the land presently owned by the defendants, and I order the plaintiffs enjoined from such use.

Having acquired no prescriptive right of access to the cemetery across the defendants' property, the plaintiffs may access the cemetery from the state highway. To allow such access, I order the defendants to remove a section of the fence bordering the state highway, such access to be not less than ten feet in width. The specific location of this access through the fence bordering the state highway will be determined by the plaintiffs so that they are assured reasonable access.

I note that the defendants have offered to provide the plaintiffs access to the cemetery at a location on the west side of the cemetery. Though this offer has been made, the plaintiffs have not accepted this offer. Furthermore, though § 55-50 of the Code of Virginia provides a procedure by which an easement may be relocated on a servient estate, no specific request has been made pursuant to this Statute, and of course, relocation of an easement requires in the first instance the existence of an easement at another location. Absent an agreement between the parties to establish an easement at the location offered by the defendants, I order such access be provided to the plaintiffs from the state highway as previously stated.

As to the issue of maintenance, I rule that the plaintiffs have the right to maintain Claypool Cemetery, but the defendants are not required to maintain the cemetery.

Finally, concerning the fence that presently encloses the cemetery, it is my opinion that this Court does not have the authority under these circumstances to order the defendants, as owners in fee, to maintain the fence, to move the fence, or to remove any portion of the fence, other than the previously discussed ten-foot section bordering the state highway. However, it is my opinion that this Court does have the authority in equity to enjoin imminent, irreparable harm to the cemetery. Because Ms. Whitley testified that she intends in the immediate future to run horses on her property, I order the defendants enjoined from allowing any horses, cows, or other livestock owned by them from entering the area of the entire cemetery, including the area

currently fenced and the area east of the current fence that I have now ruled to be a part of this cemetery. One permissible method of ensuring compliance with this order would be, of course, removal by the defendants of the fence currently bordering the east side of the cemetery, extending the north fence and the south fence in an easterly direction for a distance of twenty-five feet, then enclosing the remaining distance of 48 feet along the newly established eastern boundary of the cemetery.

As counsel are aware, I did not conceal during the trial of this matter my opinion that this dispute could be resolved by agreement. Very often, when reasonable concessions are made by all parties to a proceeding, a better result can be achieved than that which the Court has the authority to order. When the parties to this proceeding consider the effort of moving fences, installing a new culvert, and obtaining available parking for funerals in the future, a better resolution than that stated in this opinion might still be achieved through cooperation and communication. However, absent an agreement on the part of all parties, the rulings stated in this opinion will be incorporated in an order that I request Mr. Twery to prepare.