Present: Kinser, C.J., Goodwyn, Millette, Mims, McClanahan, and Powell, JJ., and Koontz, S.J.

DAVID S. DYKES, ET AL.

v. Record No. 101630

FRIENDS OF THE C.C.C. ROAD

OPINION BY
SENIOR JUSTICE LAWRENCE L. KOONTZ, JR.
January 13, 2012

FROM THE CIRCUIT COURT OF HIGHLAND COUNTY
Humes J. Franklin, Jr., Judge

In this appeal, we consider whether the circuit court erred in concluding that a certain road traversing private land in rural Highland County is a public road. The case was decided by the circuit court on stipulated facts and the appeal presents pure questions of law applied to these undisputed facts. Accordingly, we apply a de novo standard of review. Johnson v. Hart, 279 Va. 617, 623, 692 S.E.2d 239, 242 (2010).

BACKGROUND

On March 17, 2009, Friends of the C.C.C. Road, an unincorporated association purporting to represent the general public, filed a complaint for injunctive relief in the Circuit Court of Highland County against David S. Dykes, John W. Burch, and Elizabeth H. Burch (collectively, "the property owners"). The complaint alleged that the property owners possessed three tracts of land in Highland County comprising over 500 acres through which ran a mostly gravel road known

locally as the "C.C.C. Road." Asserting that the property owners "knew or should have known that the C.C.C. Road [is] a public road," the complaint alleged that they had blocked access to the road by the general public by erecting pole gates where this road intersects with Jackson River Road and Bratton McGuffin Trail, two nearby public roads. Alleging that obstructing access to the C.C.C. Road with the pole gates violated Code § 33.1-345(3) (Class 1 misdemeanor to obstruct any road), the complaint sought an injunction requiring the property owners to remove the pole gates and take no further action to obstruct access to the road by the public.

The property owners filed a joint answer on April 21, 2009 in which they denied that the C.C.C. Road is a public road. The answer expressly asserted that the road had not become public by operation of law under Code § 33.1-184 or as a result of an express or implied dedication and acceptance, and that there could be no prescriptive easement in favor of the general public to use the road.[1]

---

[1] On brief, the parties address the application of Code § 33.1-184, as well as the Byrd Road Act, 1932 Acts ch. 415 (now codified in part at Code § 33.1-69), to the facts of this case. Because the circuit court made no express ruling on the application of either law with respect to its ultimate determination that the C.C.C. Road is a public road, and neither law impinges on our analysis of the dispositive issues, we need not address them in this opinion.

On May 15, 2009, the parties filed an agreed stipulation of facts. According to that stipulation, the C.C.C. Road was constructed by the Civilian Conservation Corps sometime in the late 1930s.[2] Since its construction, the road has been used by the general public as a thoroughfare between the Jackson River Valley and the Back Creek Valley as well as for access to the George Washington National Forest. Officers of the Highland County Sheriff's Office, the county surveyor, and the Bolar Volunteer Fire Department consider it as a public road and have used the road for at least 25 years for official purposes.

In 1941, the Highland County Board of Supervisors noted the agreement of the then owner of the property where the C.C.C. Road intersected with a state road to maintain a gate and cattle guard at that intersection "and further agreed should he fail to do so, [the] State Highway Department may remove [the] gate and cattle guard." However, no government record shows that the County has formally adopted the road into the County's road system, nor has the County ever

---

[2] The Civilian Conservation Corps was a federal agency created by an act of the United States Congress "for the purpose of providing employment, as well as vocational training . . . through the performance of useful public work in connection with the conservation and development of the natural resources of the United States." Civilian Conservation Corps Act of 1937, Pub. L. No. 75-163, 50 Stat. 319 (1937).

maintained or repaired the road.  Likewise, the road has not been adopted into the state road system by the Virginia Department of Transportation ("VDOT") and does not appear on the official VDOT map for the County.

In 2001, an official of the Virginia Department of Forestry advised a landowner whose property is located along the C.C.C. Road that "emergency fire trails . . . established on private property, with the permission of the landowners, by the Civilian Conservation Corps . . . were never official state maintained roads, nor did the Commonwealth have legal easement to use them.  The trails belong to landowners on [whose property] they cross."

Other nearby landowners who access their land along the C.C.C. Road favor the restriction of access to the road and have been provided with keys to the pole gates.  Keys to these gates also have been provided to the Sheriff's Office and a utility company, and keys have been offered to the Forestry Service.

Although the case was initially set for trial, the parties filed memoranda of law in conjunction with the stipulated, undisputed material facts.  On March 2, 2010, the circuit court issued an opinion letter in which it stated that the C.C.C. Road could have become a public road by either of "[t]wo common law principles."  Relying on Bradford v. Nature

4

Conservancy, 224 Va. 181, 294 S.E.2d 866 (1982), the court first opined that private roads could become public either through an express or implied dedication by the landowner and acceptance of that dedication by the government.[3] There was no assertion of an express dedication of the C.C.C. Road as a public road by the landowners or their predecessors in title, and there are no facts which would support such an assertion in this case. The circuit court concluded that even if there had been an implied dedication of the road by the various owners of the land over which it crossed, there was "[n]o indication or record of a public authority formally accepting dedication of the Road." The court further noted that the notion of implied acceptance was not applicable to a rural road. Thus, the court ruled that Friends of the C.C.C. Road "failed to prove that the Road is public . . . by a dedication and acceptance."

The circuit court then undertook an analysis of whether the public could acquire a "right-of-way" by prescription. The court's analysis began with the recognition that "[t]he general public cannot acquire a right-of-way by prescription because the public as a whole lacks the requisite element of

---

[3] A private road may also be acquired for public use through eminent domain, but clearly such was not the case here.

5

exclusiveness, which is a component of the factors necessary to give rise to a prescriptive easement." To support this proposition, the court relied upon Burks Brothers of Virginia, Inc. v. Jones, 232 Va. 238, 246, 349 S.E.2d 134, 139 (1986), which involved an unsuccessful claim of a prescriptive easement in favor of the public over a trail also constructed on private property by the Civilian Conservation Corps. The court concluded that Friends of the C.C.C. Road "failed to prove that the Road is public . . . by prescription." Nonetheless, the court concluded that Burks Brothers implicitly supported the possibility of a public right-of-way being created on private property through "recognition" by the government of a long and continuous use by the public, and thus that Friends of the C.C.C. Road had proven that the general public is entitled to unrestricted use of this road.

On May 25, 2010, the circuit court entered a final order granting injunctive relief to Friends of the C.C.C. Road requiring the property owners to remove the pole gates and allow the general public to have access to the road. Both parties entered objections to this order. In an order dated December 10, 2010, we awarded the property owners an appeal from this judgment and also granted assignments of cross-error by Friends of the C.C.C. Road.

DISCUSSION

The property owners principally assign error to the circuit court's judgment that, while there had been no dedication and acceptance or acquisition of a prescriptive easement in favor of the general public, the C.C.C. Road is nonetheless a public road or subject to a public right-of-way by virtue of long and continuous use by the public and recognition by the government of this fact. Friends of the C.C.C. Road assign cross-error to the court's determination that the road has not become a public road by traditional principles of prescription or dedication and acceptance.

We begin by addressing the issue raised by Friends of the C.C.C. Road that the circuit court erred in concluding that this road is not a public road under principles of dedication and acceptance. As stipulated, there are no facts in the record indicating that the property owners or their predecessors in title ever made a formal offer to dedicate the C.C.C. Road to public use or of a formal acceptance of such offer by the government. Thus, in this case for dedication and acceptance to apply, both actions would have to arise by implication. In that regard, we have recently observed, "'[w]hile a dedication may be implied from the acts of the owner, these acts must be unmistakable to show the intention of the landowner to permanently give up his property. This

7

Court has long recognized that what may amount to a dedication in an urban area will not serve the same purpose in a rural one. This is because landowners in rural areas frequently allowed roads to be opened through their property without intending a dedication to the public. Just as important, the government might not have any intention to accept the road and be responsible for its maintenance. Thus, before a rural road can be dedicated, there must be a formal acceptance by the public.' " Mulford v. Walnut Hill Farm Group, LLC, 282 Va. 98, 106, 712 S.E.2d 468, 473 (2011) (quoting Bradford, 224 Va. at 198-99, 294 S.E.2d at 875).

It is not disputed that the C.C.C. Road traverses private property in a rural area. Because there can be no implied acceptance of an implied dedication of a rural road, and there is no evidence of a formal acceptance of the road in this case, the circuit court did not err in finding that there had been no dedication and acceptance of the C.C.C. Road as a public road.

We turn now to the principal issue raised by the property owners in their appeal and the closely-related issue asserted in the first assignment of cross-error. The property owners contend that the circuit court correctly concluded that there cannot be a prescriptive easement in favor of the general public to use a private road, but that it erred in finding

8

that the same effective result can be obtained by showing that the public's use of the private road has been "long and continuous" and has been "recognized" by the government. Friends of the C.C.C. Road maintains that even if the court erred in finding that a recognized long and continuous use of a private road creates a public right-of-way for its use, the court further erred in finding that a prescriptive easement could not accrue in favor of the general public.

We may readily resolve the question whether a public easement or right-of-way may be acquired solely through long and continuous public use of a private road "recognized" by the government without a formal acceptance of the responsibility to maintain the road. As we have previously noted, the circuit court correctly found that there had been no formal acceptance of an implied dedication of the C.C.C. Road as a public road by the Board of Supervisors of Highland County. The 1941 acknowledgement by the Board of an agreement by a then owner of the property to maintain a gate and cattle guard where this road intersected a state road is clearly not a formal acceptance of the road as a public road. The Board has never agreed to maintain the road as a public road would require. Nevertheless, the circuit court concluded that the long and continuous use of this road, coupled with a recognition of that use by the Board, supports the

9

determination that the road is a public road.  In reaching this conclusion, the circuit court relied upon another circuit court's decision which in turn relied upon Virginia Hot Springs Co. v. Lowman, 126 Va. 424, 101 S.E. 326 (1919).  That case, however, does not equate recognition of a long and continuous use of the road by the public with a formal acceptance by the appropriate governmental authority.

In Virginia Hot Springs, we explained that the issue of whether there was a public right-of-way regarding the width of a particular road was "founded upon dedication and acceptance" of which long and continuous use by the public was merely part of the evidence of an implied dedication, and the recognition by the government was merely part of the evidence of an acceptance.  Id. at 428-29, 101 S.E. at 327-28.  Accordingly, we hold that the circuit court erred in finding that Friends of the C.C.C. Road had established that the road is public solely by virtue of its long and continuous use by the general public and recognition of that use by the County.  The law of this Commonwealth simply does not allow for a conversion of private property to public property solely by public use.

Finally, we turn to the issue whether the public can claim a prescriptive easement over a private road, as Friends of the C.C.C. Road asserts.  The language of Burks Brothers alluded to by the circuit court to support the proposition

10

that such a prescription could arise is as follows: "[B]ecause . . . there was no evidence of long-continued use of the CCC trail by the general public, as distinguished from use by landowners, residents, and their guests, we do not agree with the trial court's conclusion that the general public has acquired a prescriptive right to use the CCC trail." Burks Brothers, 232 Va. at 249, 349 S.E.2d at 141. This statement, however, is not conclusive on whether an easement in favor of the public can be acquired by prescription. To the contrary, at most it simply makes clear that a necessary element for prescription was lacking because there was no evidence of prescriptive use of the putative easement by the claimants, that is, by the general public. Moreover, we are of opinion that the circuit court's broad interpretation of this single sentence is so contrary to the well-established law of this Commonwealth, that it cannot be sustained.

In Commonwealth v. Kelly, 49 Va. (8 Gratt.) 632 (1851), we rejected the notion that under English common law mere use over a long period could result in the conversion of a private road into a public road by prescription, noting that "[e]ven in England there must be an intention to dedicate the road . . . of which the use is the evidence and nothing more." Id. at 635. And it cannot be inferred through use alone "that an

individual makes a gift of his property to the public from an equivocal act, which equally proves an intention to grant a mere revocable license[.]  The public is not injured by this view of the subject.  It has the accommodation of the road as long as the license continues, and after the license is revoked, the road may be made public if the public convenience requires it, by making compensation to the owner."  Id. at 635-36.  We went on to affirm that there were distinctions between urban and rural areas as to what would be sufficient to prove a dedication and acceptance, but we were clear that in no case could a private road become public merely by an allegedly prescriptive use of it by many individuals over a long period of time.  Id. at 636-37.

In many subsequent opinions we have been clear that to acquire an easement or right-of-way over a road by prescription, an essential element must be that the claimant is asserting the right to the exclusion of others.  See, e.g., Craig v. Kennedy, 202 Va. 654, 657-58, 119 S.E.2d 320, 322-23 (1961).  Thus, "where the use of a way by persons owning property in the immediate area has been in common with the use of the roadway by members of the general public, the essential element of exclusiveness is lacking because the use of the roadway is dependent upon the enjoyment of similar rights by others, and no rights by prescription arise."  Ward v. Harper,

234 Va. 68, 71, 360 S.E.2d 179, 181 (1987); see also Rhoton v. Rollins, 186 Va. 352, 363, 42 S.E.2d 323, 328-29 (1947); Totten v. Stuart, 143 Va. 201, 203-04, 129 S.E. 217, 218 (1925); Kent v. Dobyns, 112 Va. 586, 587-88, 72 S.E. 139, 139 (1911). In other words, mere use by the general public is not evidence of prescriptive use, but of a license by the owner permitting the use, and such evidence will defeat a claim by one individual, by a group, or by the general public asserting a prescriptive easement.

While on occasion we have discussed the conversion of a private road into a public road by "prescription," it has always been clear in the context of those cases that the elements of prescription were being used to establish that an implied dedication of the property had been made. As we explained in Board of Supervisors of Tazewell County v. Norfolk and Western Railway Company, 119 Va. 763, 773, 91 S.E. 124, 128 (1916), "[w]hen the dedication is implied from the long and continuous use by the public for the prescriptive period of twenty years, and there has been acceptance by competent authority title to a right-of-way for a public road may be obtained by prescription." (Second emphasis added.) Viewed in the light of this prior case law, the statement in Burks Brothers relied upon by the circuit court should be interpreted as meaning that "long-continued use" of a private

13

road can result in a "prescriptive" taking of the road if there is an affirmative act by competent authority of acceptance of the dedication the use implies. Accordingly, we hold that the circuit court's ruling on this point was in error insofar as it would allow a traditional prescriptive easement to be created in favor of the general public, but its ruling that prescription had not been proven was nonetheless a correct result in light of its finding that there had been no acceptance.

## CONCLUSION

For these reasons, we will reverse the judgment of the circuit court granting a permanent injunction to Friends of the C.C.C. Road and requiring the property owners to remove the pole gates and to allow the general public unrestricted access to the C.C.C. Road, and we will enter final judgment here for the property owners.

Reversed and final judgment.